Robert KESSELRING, Donna
Kesselring, and A.L.A.,
Inc., Appellants,

v.

ST. LOUIS GROUP, INC. and Sunil
Thakkar, Respondents.

No. ED 79933.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 2, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 14, 2002.

James W. Schottel, Jr., Schottel & Associates, P.C., St. Louis, MO, for appellants.

Mayer S. Klein, John P. Lavey, Newman, Freyman, Klein & Gamache, P.C., Clayton, MO, for respondents.

JAMES R. DOWD, Chief Judge.

Robert and Donna Kesselring, as A.L.A., Inc. (Buyers) purchased the assets of Roland Moving and Storage, Inc. from William and Terry Roland (Sellers). Claiming they were not given all material financial records of the company, Buyers filed suit against Sellers and their brokers, St. Louis Group, Inc. and Sunil Thakkar (Brokers). Buyers sought rescission of the sales contract and restitution or, in the alternative, damages for fraudulent misrepresentation, negligent misrepresentation and breach of contract. The trial court entered summary judgment in favor of St. Louis Group, Inc. and Sunil Thakkar and against Buyers and designated the judgment final for purposes of appeal. We reverse and remand.

On appeal from a grant of summary judgment we view the evidence and the inferences therefrom in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). On January 20, 2000, Roland Moving and Storage, Inc. entered into an "exclusive right to sell" Listing Agreement with St. Louis Group, Inc. to assist it in the sale of its business. In relevant part, that agreement provided:

Seller agrees to provide Broker with copies of all financial statements, leases, equipment lists, inventory lists, notes and other documents pertaining to the sale of Business. Seller warrants that Business is in compliance with all federal, state, and local regulations and licensing requirements for the operation of Business. Seller warrants all information supplied to Broker to be true and

correct and that no information which could adversely effect (sic.) the sale of Business has been omitted, and to indemnify Broker against any legal action which may result against Broker due to Seller's misrepresentations or omissions. Seller agrees to notify Broker immediately of all material changes which may adversely or favorably effect (sic.) the salability or selling price of Business. If Broker secures a Buyer, ready, willing and able and a sale is lost because of misrepresentations or omissions of Seller, Seller agrees to pay Broker the full brokerage commission. Any information given by Seller may be provided buyers.

Brokers listed Sellers' assets for sale and Sunil Thakkar served as St. Louis Group's agent handling the account. The Kesselrings approached Brokers and expressed interest in purchasing Sellers' assets. Brokers kept a file on Sellers' assets and made relevant documents available to Buyers for their inspection. On April 21, 2000, Buyers and Sellers executed an "Asset Purchase Agreement." Paragraph 1 of that agreement provided for the purchase of Sellers' assets, which were defined as "the furniture, fixtures, inventory, and other tangible personal property, plus the following intangible assets and rights: Business name, customer lists, contract rights, covenant not to compete, goodwill, right to use the telephone number and any other business numbers and other intangible ownership rights of the Business . . . ." Paragraph 2 of the agreement specifically excluded Sellers' liabilities and obligations from the purchase and Sellers agreed "to indemnify and hold Purchaser harmless from and against any and all costs, losses, liabilities, damages, claims or expenses . . . arising out of or resulting from any such liability or obligation." The purchase price for the assets was set at $675,000.00.

In paragraph 7, "Representations and Warranties of Seller," Sellers promised that at the time of closing, Sellers' assets would "be free and clear of all liens, claims, charges, taxes, security interests, pledges, options or other encumbrances of any nature whatsoever."

Paragraph 21 memorialized the understanding of the parties concerning the relationship between Sellers, Brokers and Buyers. In relevant part, it states:

> Purchaser hereby acknowledges that the Broker is an agent of the Seller and not the Purchaser. Purchaser also acknowledges that Purchaser is relying solely on Purchaser's own inspection of the Seller's Business Assets and the representations of the Seller, and not the Broker, with regards to the prior operating history of the Business, the value of the Assets being purchased and all other material facts relied upon in entering this Agreement. . . . Purchaser acknowledges that Broker has not verified, and will not verify, the representations of Seller and should such representations be untrue, Purchaser agrees to look solely to Seller for relief and to hold Broker harmless in connection with all losses and damages caused Purchaser thereby.

The agreement for the purchase of Sellers' assets closed on June 15, 2000 at Brokers' office. As part of that agreement Sellers signed a "Bulk Sales Affidavit of Title to Personal Property," which, in relevant part, provided:

> 3. That the said property, and each and every part thereof, is free and clear of any and all liens, mortgages, debts, or other encumbrances, of any nature or description; and that Roland Moving and Storage, Inc. is not indebted to any one, and has no creditors; that there are no judgments existing, or entered, against it; that there are no replevins,

attachments, or executions issued against it, now in force; that no petition in bankruptcy has been filed by or against it; that it has not filed any petition, or answer, for a composition or extension, under the provisions of the Federal Bankruptcy Act; that no receiver of any of its property has been appointed; that there are no municipal, state or federal tax liens or judgements affecting the assets; and that it has the full right, power and authority to sell and transfer the said property.

4. That they, on behalf of Roland Moving and Storage, Inc., Seller, makes this affidavit, knowing full well that A.L.A., Inc. (Purchaser), are parting with a sum in excess of Six Hundred Forty Thousand Dollars ($640,000.00) and waiving the Bulk Sale law requirements, relying upon the truth of the statements contained herein, and that this affidavit is made for the purpose of inducing the said Purchasers to part with the sum of money, to purchase the property described in said Bill of Sale, and to accept of the said Bill of Sale and of this affidavit.

After Buyers took over the business assets from Sellers, they encountered several problems with suppliers, some of whom refused to do business with Buyers because of unpaid accounts. Buyers notified Brokers of their problems. On July 25, 2000, Sellers wrote to Buyers and included a document indicating that Seller had $93,861.32 in outstanding expenses from 1999. Buyers claim this was the first time they were made aware of these expenses.

On December 5, 2000, Buyers filed their first amended petition in the Circuit Court of St. Louis County. Brokers filed separate answers and a joint motion for judgment on the pleadings. Buyers filed a second amended petition on May 10, 2001. Brokers' motion for judgment on the pleadings was applied to the second amended petition and was granted that same day. Buyers filed a motion for reconsideration, which was overruled by the trial court on June 1, 2001. On June 21, 2001, the trial court vacated its order granting Brokers' motion for judgment on the pleadings, converted Brokers' motion for judgment on the pleadings to a motion for summary judgment and granted Buyers leave to file a response to Brokers' motion for summary judgment. Buyers filed a response to Brokers' motion and Brokers filed a reply. The trial court sustained Brokers' motion for summary judgment and Buyers now appeal the trial court's Order entering Summary Judgment in favor of Brokers and against Buyers.

We review a grant of summary judgment de novo, applying the same standard as the trial court. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact. *Id.* An issue is material if its resolution could affect the outcome of the action. *Id.* at 378. A dispute is genuine if the record contains competent materials evidencing two plausible but contradictory accounts of the essential facts. *Id.* at 382. In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 376. Where a "defending party," as in this case, will not bear the burden of persuasion at trial, that party may establish a right to judgment by showing facts that negate any one of the claimant's elements. *Id.* at 381.

Because there was no contract between Buyers and Brokers we need only decide if Buyers' evidence, if believed, would entitle them to a judgment on either their claim

for fraudulent or negligent misrepresentation.

■ The elements of a fraudulent misrepresentation claim are: (1) a false, material representation, (2) the speaker's knowledge of its falsity or his ignorance of its truth, (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated, (4) the hearer's reasonable reliance on its truth, and (5) the hearer's consequent and proximately caused injury. *Id.* at 386. The elements of a negligent misrepresentation claim are similar. The plaintiff must prove: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 689 (Mo.App. E.D. 1994) (adopting the RESTATEMENT (SECOND) OF TORTS § 552 test for negligent misrepresentation).[1]

■ There are only two differences between a fraudulent and negligent misrepresentation. First, fraudulent misrepresentation requires that the person *knowingly or recklessly* supply false information, whereas negligent misrepresentation requires no such knowledge or recklessness. Second, negligent misrepresentation requires that the information

be supplied in the course of the defendant's business. It is here undisputed that any information Brokers failed to provide Buyers was in the course of their business. So the only difference between the fraudulent and negligent misrepresentation claims here is the knowledge element. But the Brokers do not claim there is no material fact in dispute as to that element. They argue only that the Seller failed to show evidence of the three elements common to both claims, to wit: the existence of a duty to disclose, the materiality of the information alleged to have been withheld and reliance. Because these elements are common to both fraudulent misrepresentation and negligent misrepresentation, we will treat them together.

The essence of Buyers' complaint is that they were not provided with certain financial records in the possession of Brokers and Sellers until after the sale. Brokers deny this, claiming that they provided the Kesselrings with the "1999 Moneys Owed" and "December 1999 Balance Sheet." But because this comes to us on appeal from the grant of summary judgment, we view the evidence and inferences therefrom in the light most favorable to the Buyers. Consequently, we assume that Brokers and Sellers failed to provide Buyers with these documents until after the assets had been transferred as Buyers claim. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. The central question is: did Brokers have a duty to supply Buyers with the "1999 Moneys Owed" and "December 1999 Balance Sheet"? If so, can Buyers maintain

1. Section 552 of the Restatement provides, in relevant part:

    One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business trans-

actions, is subject to liability for pecuniary loss caused to them, by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

an action for fraudulent or negligent misrepresentation?

Section 551 of the RESTATEMENT (SECOND) TORTS makes clear that under some circumstances a person's failure to disclose information constitutes a positive misrepresentation.[2] Claims for both fraudulent and negligent misrepresentation can arise from the failure to disclose information. *Blaine v. J.E. Jones Construction Co.*, 841 S.W.2d 703, 705 (Mo. App. E.D.1992); *Frame v. Boatmen's Bank of Concord Village*, 782 S.W.2d 117, 121–22 (Mo.App. E.D.1989). But non-disclosure amounts to a misrepresentation only when the person is under a duty to disclose. § 551(1) RESTATEMENT (SECOND) TORTS. The Restatement identifies five circumstances under which persons in a business transaction have a duty to disclose:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
>> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>>
>> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>>
>> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>>
>> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>>
>> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Buyers argue that Brokers had a duty to provide the "December 1999 Balance Sheet" and the "1999 Moneys Owed" because Brokers provided all other relevant financial documents. Buyers claim this partial disclosure of information created a duty to make a complete disclosure. Brokers claim they were under no duty to disclose the documents, but cite no case to support their position that their partial disclosure did not create a duty of full disclosure. We agree with Buyers. If Brokers gave Buyers the impression that their files contained all relevant business documents, they had a duty to disclose all relevant documents. *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 62–3 (Mo.App. E.D. 1999); *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 227–28 (Mo.App. E.D.1980).

Brokers argue, however, that even if they had a duty to disclose, Buyers still cannot offer proof on all the elements of their fraudulent and negligent misrepresentation claims because (1) the documents in question were not material and (2) Buyers could not have reasonably relied on Broker to supply them. Both fraudulent

---

**2.** Section 551(1) of the Restatement (Second) Torts states:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

and negligent misrepresentation claims require that the misrepresentation be material and reasonably relied upon by the plaintiff. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 386; *Colgan*, 879 S.W.2d at 689.

■ Brokers argue the documents were not material because Sellers were purchasing only the assets of the business, not its liabilities, and that therefore the liabilities of the business are not material to the purchase. We disagree. While further development of the facts at trial may show otherwise, the record indicates that Brokers and Sellers knew that Buyers entered the "Asset Purchase Agreement" in order to run "Roland Moving and Storage" as a business. Clearly, the costs of running that business and any outstanding debts the business incurred may be material in determining the value of such assets as the business name, its contract rights and goodwill. Simply because the agreement is titled as an "Asset Purchase Agreement" does not mean that the business's debts and liabilities are not material to determining the value of the assets. Viewing the evidence and inferences therefrom in the light most favorable to the party against whom summary judgment was entered, we cannot say that as a matter of law the "December 1999 Balance Sheet" and the "1999 Moneys Owed" documents were not material.

■ Brokers next argue that Buyers could not reasonably rely on Brokers to supply the missing documents because Buyers signed the Asset Purchase Agreement, which in relevant part, states:

Purchaser hereby acknowledges that the Broker is an agent of the Seller and not the Purchaser. Purchaser also acknowledges that **Purchaser is relying solely on Purchaser's own inspection of the Seller's Business Assets and the representations of the Seller, and not the Broker, with regards to the prior operating history of the Business, the value of the Assets being purchased and all other material facts relied upon in entering this Agreement. . . .** Purchaser acknowledges that Broker has not verified, and will not verify, the representations of Seller and should such representations be untrue, Purchaser agrees to look solely to Seller for relief and to hold Broker harmless in connection with all losses and damages caused Purchaser thereby.

(emphasis added). Brokers argue that by signing the Asset Purchase Agreement, which included this clause, Buyers agreed not to rely upon Brokers to give them all documents or to verify the accuracy of the documents received.

Our concern with Brokers' argument is that, if accepted, it would immunize Brokers from being held accountable for any of their misrepresentations, whether negligent or intentional. The broker's interest is in selling the property for the highest possible price. It clearly benefits the Seller for Broker to keep from Buyers' view all information tending to diminish the value of the property. It is also in the interest of the broker to appear trustworthy, impartial and knowledgeable. If enforcement of paragraph 21 of this agreement will immunize brokers against liability for negligent and fraudulent misrepresentation, brokers will be encouraged to use this immunity for their clients' benefit and conceal damaging information from buyers without fear of suit. This is in itself troubling. But there is more.

The contract in this case, if interpreted as suggested by Brokers, does not allow the Buyers to seek redress even from Sellers for Broker's misrepresentations. The agreement says: "Purchaser acknowledges that Broker has not verified, and will not verify, the representations of Seller and should such representations be untrue, Purchaser agrees to look solely to Seller for relief and to hold Broker harm-

less in connection with all losses and damages caused Purchaser thereby." This, in effect, says that the Buyer may seek redress from Seller only for the misrepresentations of the Seller, but not for the misrepresentation of the Broker. If the agreement bars Buyer from relying on the representations of Broker, then Buyer can never seek redress for those misrepresentations. While Brokers admit that paragraph 21 is not a release, they nonetheless claim that it is an admission that Buyers did not rely on Brokers' representations. But this argument, if followed, gives paragraph 21 the power of a release. Brokers did not plead release in their answer, as required by Rule 55.08. Whether Buyers reasonably relied on Brokers to supply the missing documents must therefore be determined by the facts as they come out at trial and not as a matter of law on motion for summary judgment.

Reversed and remanded.

PAUL J. SIMON and SHERRI B. SULLIVAN, JJ., Concur.