**Janet WENGERT, Appellant,**

v.

**THOMAS L. MEYER,
INC., Respondent.**

No. ED 83941.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 7, 2004.

Andrew Tarry, Francis Toohey, Jr. (co-counsel), Perryville, MO, for respondent.

Geoffrey L. Pratte, Farmington, MO, for appellant.

## OPINION

GLENN A. NORTON, Judge.

Janet Wengert ("Buyer") appeals the judgment finding that she failed to prove fraudulent or negligent misrepresentation by Thomas L. Meyer, Inc. ("Seller") in connection with her purchase of undeveloped land in Seller's subdivision. We affirm.

## I. BACKGROUND

After Buyer purchased a lot in Seller's subdivision and built her home there, she discovered a severe water-drainage problem in her backyard. Before the purchase, the lot had been covered in tall weeds, which allegedly prevented her from carefully examining the property. Buyer was not aware of the exact topography of the land at the time of her purchase, saw no evidence of any water-drainage problems on the lot and was not informed of any drainage problem by Seller or any of its agents. Although a preliminary plat of the subdivision was filed at the city hall showing the contour lines of the land, the final subdivision plat, which was recorded in the land records and given to Buyer, did not have contour lines.

The severe water-drainage problems in Buyer's backyard arose after a period of wet weather. Although the water did not damage her home directly, Buyer testified that her property value was zero because of the water that sometimes flowed across her backyard. It is not entirely clear what caused the drainage problem, but possibilities include a "wet weather spring" or "dry-bed creek" located near her backyard, or simply wet weather combined with the slope of the land around her backyard.

Seller's witnesses indicated that they had no knowledge of a water problem on

the lot, although the "swale" on the property was evident from the land's topography. The contractor who built Buyer's home testified that he saw no problematic water conditions when building her or her neighbor's homes, but that by looking at the surrounding area one would assume that water would drain there.

Under the original contract for sale of the land, Buyer was allowed to inspect the property and Seller was required to give her a disclosure statement. But later Buyer signed an amendment to the contract that removed the disclosure requirement and postponed the closing date. Buyer testified that Seller's sales manager told her that the amendment only changed the closing date, that she relied on this representation, that she did not read the amendment and that she failed to realize that it also removed the disclosure requirement. Seller's witness, however, testified that she told Buyer ahead of time that there would be no disclosure statement. No disclosure was ever provided, and Buyer never requested one.

Following a bench trial, the court found that Seller had no duty to disclose the possibility of a drainage problem. The court found that the parties "stood on equal footing to learn" about the problem and that "no witness envisioned that this amount of water would ever accumulate." The court also found that the drainage problem was intrinsic to the land and that if Seller had known of the problem it would be inclined to find that Seller had a duty to disclose that information to Buyer. But it found no clear and convincing evidence that Seller or its agents had actual or constructive knowledge that this problem existed. The court found no convincing evidence of any form of negligent misrepresentation and stated that the amendment eliminating the disclosure requirement was "not misleading."

## II. DISCUSSION

In this court-tried case, we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court on the credibility of witnesses, and the trial court is free to believe all, part, or none of a witness's testimony. *State ex rel. Moore v. Brewster*, 116 S.W.3d 630, 639 (Mo.App. E.D.2003).

### A. Misrepresentation of the Water Problem

■ Buyer argues that she is entitled to recover under a misrepresentation theory based on Seller's failure to give her sufficient information about her property at the time of sale. Fraudulent misrepresentation and negligent misrepresentation can arise from a person's affirmative misrepresentations or from passive nondisclosure. *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813–14 (Mo.App. E.D.2002). But nondisclosure is only actionable when the defendant had a duty to disclose the information. *Id.* at 814 (citing RESTATEMENT (SECOND) OF TORTS Section 551 (1977)).

■ Fraudulent misrepresentation involves knowingly or recklessly supplying false information or omitting information while under a duty to disclose it, while negligent misrepresentation only requires a failure to exercise reasonable care. *Kesselring*, 74 S.W.3d at 813–14. Therefore, to recover for nondisclosure, the plaintiff must show that the defendant knew or should have known about the underlying factual information that allegedly should have been disclosed. *See* RESTATEMENT Section 551(2) (listing five circumstances

where a duty to disclose arises, each of which requires some level of knowledge).

### 1. Negligent Misrepresentation

■ Buyer argues that the court misapplied the law regarding negligent misrepresentation by requiring knowledge or recklessness instead of mere negligence. She points out the following findings in the trial court's judgment:

> ... no evidence was presented that would convince this court that would constitute any form of negligent misrepresentation on the part of [Seller]. No evidence was presented that clearly showed any conduct on the part of [Seller] or [its] agent[s] that was calculated to mislead and to fraudulently gain an advantage over [Buyer].

Although the court referred to a lack of negligent and intentional conduct in the same paragraph, the first sentence was clearly directed toward the Buyer's negligent misrepresentation claim and the reference in the second sentence to a lack of conduct "calculated to mislead" the Buyer was directed toward the fraudulent misrepresentation claim. Point denied.

### 2. Lack of Knowledge

■ Several of the trial court's findings indicate that it concluded that Buyer had failed to prove that Seller knew or should have known about any severe water-drainage problem.[1] Buyer argues that such factual findings relating to Seller's lack of knowledge are against the weight of the evidence. We disagree.

At trial, Buyer's neighbors, who own the lot next to hers, testified that the sales manager for Seller told them about having once walked through standing water on their property and that it must be a "dry-bed creek" at certain times of the year. But the sales manager testified that he had no personal knowledge of the water drainage in the area and could not recall what he had told the neighbors. Seller's corporate representative testified that he was aware of the land's topography, the depression in the land and how water was channeled through the area, but that he saw no problem with it. It was undisputed that Seller had access to a topographical map of the subdivision, but only gave Buyer a map without contour lines.

Given these facts, we cannot say that the trial court's findings were against the weight of the evidence. The testimony of Buyer's neighbors, if believed, tends to show that Seller had some level of knowledge that part of Buyer's lot might have unusual drainage issues. But the court was free to disbelieve the neighbors' testimony about the sales manager's state-

---

1. On appeal, Buyer has failed to adequately describe exactly what condition or information should have been disclosed under her theory of the case. In her petition, she alleged the existence of a "wet weather spring," but no evidence of that condition was presented at trial. In her reply brief, Buyer initially argues that the nondisclosure was supplying her with a plat map of the subdivision that lacked contour lines, while the Seller possessed a topographical map showing contour lines. Later in the brief, however, she states that "the thrust of the problem[ ] is a severe water condition, regardless of its source, and not simply 'standing water.' "

This later statement is most in line with the petition and the evidence presented. Buyer's evidence tended to show that there was a severe water-drainage problem on the property; she did not advance the theory that Seller should have disclosed the existence of any and all moisture on the property or should have provided every bit of technical or topographical information known about the property. Therefore, the relevant inquiry for purposes of this argument is whether Seller had knowledge of a severe water-drainage problem, not whether Seller knew of the general topography of the land or knew that some water might drain onto parts of Buyer's property.

ments. We defer to the trial court's superior ability to evaluate the credibility of witnesses. *See Yates v. Bridge Trading Co.,* 844 S.W.2d 56, 58 (Mo.App. E.D.1992). Moreover, even if the court found this evidence credible, we cannot say that it would have satisfied Buyer's burden of proof. Even if the sales manager knew about a possible "dry-bed creek" on Buyer's property that flowed during certain parts of the year, this does not necessarily show that Seller knew or should have known that a severe water-drainage problem would occur once Buyer built her home there. We are not firmly convinced that the trial court's findings were against the weight of the evidence. *See id.* Point denied.

Since Buyer failed to prove that Seller knew or should have known about the severe water-drainage problem, her claims of fraudulent and negligent misrepresentation fail. Buyer's contention that the court misapplied the law by imposing a duty on her to investigate the property more fully is therefore moot, and that point on appeal is denied.

**B. Lack of a Disclosure Statement**

■ The trial court found that the amendment to the original contract was not misleading and did not change the terms relating to a disclosure statement. Buyer argues that these findings were against the weight of the evidence. She contends that the amendment was misleading because the sales manager misrepresented that it merely postponed the closing date of the sale, when in fact it also removed the disclosure requirement.

Paragraph nineteen of the original contract is the only portion dealing with a disclosure statement:

19. SELLER DISCLOSURE STATEMENT. A Seller property condition disclosure statement is not a substitute for any inspections that Buyer may wish to obtain. Except as disclosed either in this Contract or any such seller property condition disclosure statement, neither Seller nor any broker or salesperson has made any representations not specifically set forth.

[The next page of the agreement states that this] Contract is contingent on Buyer's review of a Farm or Vacant Land Disclosure Statement which Seller will provide to Buyer ...

Later, both the sales manager and Buyer signed an amendment to the contract that postponed the closing date and removed the disclosure requirement.

We agree with the trial court that the amendment, on its face, was not misleading in any way. Its terms were handwritten on a one-page, pre-printed form. The two items listed on that form were the changing of the closing date and the removal of the disclosure requirement. The latter was conspicuously written in the middle of the page.

■■ The amendment, however, clearly changed the terms of the original contract by removing the disclosure requirement. Although the court's statement to the contrary was erroneous, we find that it did not materially affect the merits of the action because Buyer failed to prove a misrepresentation relating to this change. *See* Rule 84.13(b) (stating that we cannot reverse the trial court unless its error materially affected the merits of the action). Although Buyer argues that the court "completely overlooked the representation" by the sales manager relating to the contents of the amendment, the judgment indicates that it simply did not believe Buyer's testimony, which was the only evidence of this alleged misrepresentation. The trial court was free to disbelieve her assertion that she did not notice

or read the portion of the amendment that removed the disclosure requirement. *See Brewster*, 116 S.W.3d at 639. Further, other evidence indicated that Buyer had already been told that a disclosure statement would not be provided and that Seller routinely does not provide disclosures when selling vacant land. Point denied.

### III.  CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE, P.J. and BOOKER T. SHAW, J., concurring.