Mary **GURLEY,** Plaintiff–Respondent,

v.

**MONTGOMERY FIRST NATIONAL BANK, N.A.,** Defendant–Appellant.

No. 26190.

Missouri Court of Appeals, Southern District, Division Two.

April 29, 2005.

Dale E. Gerecke, Bradshaw, Steele, Cochrane & Berens, L.C., Cape Girardeau, for appellant.

Shawn D. Young, Portageville, for respondent.

KENNETH W. SHRUM, Judge.

Mary Gurley ("Plaintiff") sought damages from Montgomery First National Bank ("Bank") on a negligent misrepresentation theory. Specifically, she alleged Bank had continuously represented that her husband was insured by a term life policy, but belatedly (after her husband died), she learned no such coverage existed.

The jury awarded Plaintiff $150,000 for damages and attorney fees. In a judgment on remittitur, the trial court reduced this amount to $143,368.57. Bank appeals, presenting four claims of trial court error: (1) error in denying Bank's motion for judgment notwithstanding the verdict ("JNOV"); (2) instructional error (verdict director); (3) error in the admission of testimony; and (4) error in awarding attorney fees.

We reverse that part of the judgment awarding attorney fees to Plaintiff. In all other respects, the judgment is affirmed as modified.

## FACTS

Plaintiff married Bill Gurley ("Bill") in 1950. The couple lived on a farm in Pemiscott County, Missouri, for most of their married life.[1] Bill's farm business was the family's only income source, as Plaintiff was a "housewife" who raised their six children. As part of the farming operation, Bill and Plaintiff borrowed money each year.

Customarily, Bill "made two payments" on his annual crop loan, i.e., "he brought in the [farm] proceeds, and the settlement in February, and then, when he gathered the wheat, he'd take in the wheat settlement and everything, and ... July, or August, there, and settle." Each year that Plaintiff and Bill borrowed money, they requested credit life insurance coverage insuring Bill's life. The premium for the credit life insurance was then included in the farm loan. The obvious purpose was to protect Plaintiff's economic interests should Bill die, i.e., assure Plaintiff would be debt free since she could not repay a loan out of her $600 monthly social security benefit.

In November 1997, Plaintiff and Bill borrowed $91,570 from Bank. The loan included an amount needed to buy a sixteen-month credit life insurance policy for Bill. By its terms, the loan matured in February 1999. However, a county-wide crop failure and resultant income loss prevented Bill and Plaintiff from paying the note in full at maturity. For the next two years, the loan was extended or renewed several times. When Bill died on February 9, 2001, the loan was not yet fully paid.

Plaintiff filed this suit after learning the life insurance coverage on Bill had expired before he died. She testified that during the two-year period when the loan was either extended or renewed, Bank consistently told Bill and her that Bill had credit life insurance; that Bank employees made such representations each time she and Bill dealt with them; that based on these representations, the couple did not seek insurance elsewhere as they believed adequate coverage existed through Bank; and that Bill died believing he had life insurance that would cover the couple's indebtedness to Bank. Plaintiff specifically denied being notified by Bank that there was no life insurance coverage after the initial loan period.

Contrarily, Bank's vice-president Bill Sharp ("Sharp") testified that before Bill died, he sent a letter to Plaintiff and Bill that informed them no credit life insurance existed. Sharp explained that after the initial sixteen-month period of insurance expired, neither Bill nor Plaintiff completed the necessary paperwork to extend or obtain additional coverage. According to Sharp, this lack of cooperation continued despite the Bank informing them of the deficiency, i.e., not having credit life insur-

---

[1]. For reasons of clarity and simplicity, we refer to Mr. Gurley by his first name. No disrespect is intended.

ance. In his words, the couple took no action to cure the problem.

The jury found for Plaintiff and this appeal followed.

## DISCUSSION AND DECISION

### *Point I: Did Plaintiff Fail To Make Submissible Case?*

Bank's first point maintains the trial judge erred when he denied its motion for JNOV because Plaintiff failed to present sufficient evidence to make a submissible case based on a negligent misrepresentation theory. In the argument part of its brief, Bank characterizes Plaintiff's testimony as "vague, misleading and erroneous" and then states, in conclusory fashion, that her testimony does not "constitute sufficient evidence to make out a submissible case." Our review of this point is undertaken with these following principles in mind.

■ To make a submissible case of negligent misrepresentation, Plaintiff had to prove: (1) the speaker supplied information in the course of his or her business; (2) due to the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided for the guidance of a limited group of persons in a particular business transaction; and (4) in justifiably relying on such information, the listener suffered a pecuniary loss. *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813[2] (Mo.App.2002).

■ We will reverse a judgment in a jury-tried case on the grounds of insufficient evidence only where there is a "complete absence of probative fact" to support the jury's verdict. *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682[25] (Mo. App.2002). Moreover, we review the evidence in the light most favorable to Plaintiff, disregarding all contrary evidence. *Id.* at 682[23]. A case should only be taken from a jury when the facts in evidence and the inferences fairly drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. *Wright v. Over–The–Road*, 945 S.W.2d 481, 498 (Mo.App.1997).

■ Here, Plaintiff testified unequivocally that each time she and Bill signed loan documents with Bank (including extension agreements), they were told by Bank employees that Bill would have credit life insurance. Obviously, the "insurance coverage" statements attributed to Bank employees by Plaintiff were made in the course of Bank's business and were intentionally provided by Bank to Plaintiff and Bill. Thus, the first element was proven.

As to the second element, admittedly, the information given Bill and Plaintiff was false. Bill was not insured after the initial sixteen-month coverage period, despite Bank employees' representations to the contrary. On this record, the jury reasonably could have inferred that Bank employees who made these representations failed to use reasonable care, either by not following up and getting the insurance, or by not checking the file and learning that the original policy was for only a sixteen-month term. Sufficient evidence exists to satisfy element two.

Third, the information given by Bank's employees to Plaintiff and Bill, i.e., Bill had credit life insurance, was not part of a broad credit life sales program or other generalized promotion by Bank. It was an assurance given Plaintiff and Bill that the remainder of the November 1997 farm operating loan would be paid via life insurance proceeds if Bill died. As such, the record supports a finding of the third element, i.e., this was information "intentionally provided for the guidance of a limited group of persons in a particular business transaction."

Finally, since Bank kept all loan documents in its possession, the jury reasonably could have found Plaintiff and Bill relied on the representations of Bank's employees and reasonably believed credit life insurance was obtained on Bill each time the loan was extended or renewed. Since this had been the normal course of dealing, the jury reasonably could have inferred Plaintiff and Bill were justified in relying on these representations. Another equally valid inference the jury could have drawn was that, but for the misrepresentation, the couple would have then obtained insurance elsewhere. Since they did not know Bill was uninsured (due to the misrepresentation) and did not get other insurance, Plaintiff suffered damage when Bill died without insurance in place that would pay the debt owed Bank. As such, element four was proven.

Although not explicitly stated, the essence of Bank's Point I claim is that we should act as a super juror and resolve factual conflicts favorably to it, rather than to Plaintiff as the jury did. That, however, is not our function. *See, e.g., State v. Norman,* 145 S.W.3d 912, 921 (Mo.App. 2004).

Although Bank devotes ten pages of its brief to discussing conflicts in evidence, it asks that we resolve those conflicts by favorably considering Bank's records and the testimony of its witnesses. In that fashion, Bank attempts to persuade us that Plaintiff's recollection of events is completely "erroneous" or is "based upon her unsubstantiated belief." Inexplicably, however, Bank never disputes the fact that if Plaintiff's evidence were believed, then a submissible case was made. Bank's Point I argument, that a submissible case was not made, fails. This follows because reasonable minds could resolve the evidence differently and none of the evidence defies reason or logic. *See Ryan v. Maddox,* 112 S.W.3d 476, 480–81[14] (Mo.App.2003); *Poloski v. Wal–Mart Stores, Inc.,* 68 S.W.3d 445, 449–50 (Mo.App.2001). Point I denied.

### Point II: Alleged Erroneous Verdict Directing Instruction

Bank's second point urges reversal based on its claim that the verdict-directing instruction was "not cast in terms of all the elements necessary to prove a cause of action for negligent misrepresentation."[2] In arguing the point, Bank assigns *six specific* reasons why the instruction allegedly failed to follow the substantive law. However, as explained below, four of the six arguments in Bank's brief (labeled B through E) are unpreserved for our review because they raise issues not presented to the trial judge.

To explain, Rule 70.03 mandates that "[c]ounsel … make specific objections to instructions considered errone-

---

2. The instruction given reads:

"Your verdict must be for Plaintiff if you believe:

"First, defendant represented to plaintiff in the course of defendant's business that credit life on the life of Bill Gurley existed, intending that plaintiff rely upon such representation in making loans at defendant's bank, and

"Second, such representation was false; and

"Third, defendant knew or by using ordinary care could have known that such representation was false, and

"Fourth, such representation was material to the plaintiff in making the loans at defendant's bank, and

"Fifth, plaintiff relied on such representation of defendant in making such loans, and in so relying plaintiff used that degree of care that would have been reasonable in plaintiff's situation and

"Sixth, as a direct result of such representation the plaintiff was damaged.

"The phrase 'ordinary care' as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances."

ous." [3] This means counsel must "state[ ] distinctly the matter objected to and the grounds of the objection." Rule 70.03. As such, a simple objection on the basis that the instruction fails to state the applicable law or fails to contain all of the necessary elements of a cause of action, standing alone, is considered a general objection, preserving nothing for appellate review. *See State ex rel. MacLaughlin v. Treon*, 926 S.W.2d 13, 15 (Mo.App.1996); *Walsh v. St. Louis Nat. Baseball Club, Inc.*, 822 S.W.2d 559, 563 (Mo.App.1992).

At the trial judge's instruction conference, Bank made the following objection to the verdict director:

> "The [Bank] would object to Instruction No. 6 on the basis of the fact that it is not in keeping with the law in terms of the elements necessary to be proven or to make out a case for negligent misrepresentation.... *I would object specifically* to instruction No. 6 for the reason *that it fails to present to the jury* certain elements of that cause of action which would necessarily include *that the [Bank ] intentionally provided information for the guidance of plaintiff in a particular business transaction.* That the *plaintiff [justifiably ] relied* on that information and as a result of the plaintiff's reliance on the statement, plaintiff was damaged." (Emphasis supplied.)

From this we find that, with two exceptions, Bank's at-trial objection to the verdict director was nothing more than a general objection. To the extent that Bank now complains about the instruction for reasons other than those emphasized by italics, such complaints—labeled paragraphs "B" through "E" in Bank's brief— are unpreserved. *See Treon*, 926 S.W.2d at 15; *Walsh*, 822 S.W.2d at 563. Moreover, we decline to exercise our discretion to review arguments "B" through "E" for plain error. Rule 84.13; *Gomez v. Construction Design, Inc.*, 126 S.W.3d 366, 371–73 (Mo.banc 2004).[4]

■ As a prelude to addressing the only two preserved complaints about Instruction 6, we note the following. When, as here, no applicable MAI approved instruction exists, the instruction given must be simple, brief, and free from argument. Rule 70.02(b). As such, an instruction shall not submit to the jury or require findings of detailed evidentiary facts. *Id.* To reverse for prejudicial instructional error, the instruction must have misled, misdirected, or confused the jury, and the test is whether an average juror would properly understand the applicable rule of law being conveyed by the instruction. *City of Sullivan v. Truckstop Restaurants, Inc.*, 142 S.W.3d 181, 197[30] (Mo.App.2004).

■ Bank's argument "A" maintains Instruction 6 was substantively erroneous in that it failed to require the jury to find that Plaintiff's reliance on Bank's representation was "justifiable." Although not explicitly stated, the apparent premise of Bank's argument is that the instruction was fatally flawed because it did not ex-

---

**3.** All rule references are to Supreme Court Rules (2004), unless otherwise stated.

**4.** Our disinclination to review arguments in paragraphs "B" through "E" is heavily impacted by two facts. First, Bank cites no case law in those paragraphs to support its arguments. For instance, two of Bank's arguments rely on an alleged distinction between the exercise of reasonable care versus the exercise of ordinary care. If such distinction exists, it is incumbent upon Bank to provide support for this argument, or explain its absence. *Lediner v. Harris*, 145 S.W.3d 479, 483 (Mo.App.2004). Second, two of the alleged deficiencies in instruction 6 are found in Bank's proposed verdict director. This means Bank could not question that part of the instruction even if the alleged errors had been preserved for our review. *Layton v. Pendleton*, 864 S.W.2d 937, 941[15] (Mo.App. 1993).

pressly use the phrase "justifiable" reliance. What Bank does clearly argue is that " 'justifiable' would necessarily take into account all the facts and circumstances surrounding the alleged representation that credit life insurance existed." We agree with the latter assertion, but disagree with the first two sentences of this argument.

As written, the instruction contemplated precisely what Bank argues on appeal, i.e., that the jury should take into account the facts and circumstances. This is found in paragraph "fifth" of the instruction. *See* note 2. There the jury was told it had to decide if Plaintiff was reasonable in relying on the representations considering her "situation."

Although the term "justifiable" was not in the instruction, Bank does not advance any reason why the instruction as given did not comport to the substantive law or how inclusion of the term "justifiable" would have better served an average juror in properly understanding the applicable rule of law. Essentially, Bank's argument is more semantics than substance. *See, e.g., Kesselring,* 74 S.W.3d at 813–15 ("justifiably relied" equated to "reasonably relied"); *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 749 (Mo.App.1993) (right to rely in fraudulent misrepresentation should be submitted in ordinary care language); *Frame v. Boatmen's Bank of Concord Village,* 824 S.W.2d 491, 493–94 (Mo.App.1992); RESTATEMENT SECOND OF TORTS § 552 cmt. a-e (1977).[5] Bank's Point II(A) argument is denied.

■ Bank's Point II(F) argument alleges the instruction failed to require the jury to find another essential element of Plaintiff's case, namely, "that the speaker intentionally provided information." Inexplicably, Bank's "argument" consists of a single sentence without development or comment.

Even so, we note that paragraph first required the jury to decide if "defendant represented to plaintiff in the course of defendant's business that credit life insurance on the life of [Bill] existed, *intending* that plaintiff rely upon such representation in making loans at [Bank]." (Emphasis supplied.) A jury finding that Bank intended for Plaintiff to rely upon the representation necessarily encompassed a finding that Bank intentionally provided the information. Bank's implicit argument to the contrary is rejected. Point II is denied.

### Point III: Error in Admitting Evidence.

■ Bank's third point urges reversal because the trial court admitted the testimony of George Watts ("Watts"), a banking expert. Bank claims that "his testimony did not touch upon any of the elements of [Plaintiff's] cause of action for negligent misrepresentation and tended only to show that Bank had not adhered to standard banking practices."

■ The admissibility of evidence lies within the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of discretion. *Nelson v. Waxman,* 9 S.W.3d 601, 603[2] (Mo.banc 2000). The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and suggests a lack of careful consideration and deliberation. *Id.* at 603[3].

■ To be admissible, evidence must be relevant, both logically and legally. *Shelton v. City of Springfield,* 130 S.W.3d 30, 37[7] (Mo.App.2004). Evidence

---

**5.** The law of negligent misrepresentation as approved by the Restatement has been adopted in Missouri. *Kesselring,* 74 S.W.3d at 813.

is logically relevant if it tends to prove or disprove a fact in issue or corroborate other evidence. *Guess v. Escobar,* 26 S.W.3d 235, 242[14] (Mo.App.2000). Evidence is legally relevant when its probative value (usefulness) outweighs its prejudicial effect, such as unfair prejudice, confusion of the issues, misleading of the jury, undue delay, or waste of time. *Id.* at 242[16].

Here, the evidence was properly admitted. The key issue at trial involved veracity, i.e., was Plaintiff's testimony credible or were Bank's employees telling the truth? One key piece of evidence was a letter from the Bank written to Plaintiff and Bill before his death that allegedly informed them no insurance existed. Plaintiff testified that neither she nor Bill received the letter. Plaintiff intimated that the Bank fabricated the letter after Bill's death to cover up its negligence. Plaintiff also introduced evidence tending to show that the Bank changed its operating manual after Bill's death to cover up its negligence. The Bank denied these allegations.

The essence of Watts' testimony was that the Bank engaged in practices that did not comply with standard banking procedures when dealing with Plaintiff and Bill. This evidence would be helpful in the jury's determination of whether the Bank was inclined to "bend the rules" when dealing with the couple. This evidence would also aid the jury in its credibility determinations. For these reasons, the evidence was logically relevant. Likewise, the evidence obviously possessed probative value. The prejudicial nature of the evidence did not outweigh its probative effect. The only applicable category of the testimony's "prejudicial effect" was "unfair prejudice." However, the prejudice to the Bank that resulted was in no way "unfair." We find no abuse of discretion when the trial court admitted Watts' testimony. Point denied.

### Point IV: Attorney Fees

In its last point on appeal, the Bank alleges the trial court erred when it awarded Plaintiff attorney fees and expenses in the amount of $38,586.29. The Bank correctly notes that Missouri courts follow the "American Rule" in awarding attorney fees. To counter this, Plaintiff argues that her case falls into an exception to the American Rule.

The American Rule provides that parties to a lawsuit are to bear the expenses of their own attorney fees. *Chapman v. Lavy,* 20 S.W.3d 610, 614 (Mo.App.2000). Under this rule, " 'absent statutory authorization or contractual agreement, with few exceptions, each litigant must bear his own attorney's fee.' " *Windsor Ins. Co. v. Lucas,* 24 S.W.3d 151, 156 (Mo.App.2000)(quoting *David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 193 (Mo.banc 1991)). The exception at issue here is when reimbursement is ordered by a court of equity to balance the benefits. *Chapman,* 20 S.W.3d at 614[14]. This exception, however, only applies in very unusual circumstances. *Id.* at 614[18].

The unusual circumstances exception is applied rarely and only in limited fact situations. *Windsor Ins.,* 24 S.W.3d at 156. These types of circumstances have been found in unusual types of cases or where extremely complicated litigation is involved. *Chapman,* 20 S.W.3d at 614. "In addition, it is the nature of the lawsuit, not the facts, which determine whether a case is unusual." *Id.* at 614[18].

This case was a simple negligent misrepresentation case. There was nothing unusual about this type of case. The facts of the case were simple and straightforward. As one witness characterized it, the case was simply a "swearing match" between Bank's employees and Plaintiff.

The jury was only required to decide which version of the facts was true. This case simply does not fall into those limited situations in which the exception has been applied. *Windsor Ins.*, 24 S.W.3d at 156.

The trial court erred when it awarded Plaintiff $38,586.29 for attorney fees. That part of the judgment is reversed. The judgment is reduced by the sum of $38,586.29 so that the judgment in favor of Plaintiff is for $104,782.28. Rule 84.14. In all other respects, the judgment is affirmed.

PARRISH, P.J., and BARNEY, J., Concur.