382 F.Supp.2d 1112 (2005)
James REDING and Mary Katherine Reding, Plaintiffs,
v.
GOLDMAN SACHS & CO., Defendant.
No. 4:04CV1118SNL.
United States District Court, E.D. Missouri, Eastern Division.
June 27, 2005.
*1113 *1114 *1115 Steven W. Koslovsky, Steven Koslovsky, LLC, St. Louis, MO, for Plaintiffs.
Hardy C. Menees, Menees and Whitney, St. Louis, MO, Michael J. Dell, Karen Steinberg Kennedy, Kramer, Levin, Naftalis & Frankel, LLP, New York, NY, for Defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
This matter is before the Court on the defendant's motion to dismiss plaintiffs' Amended Complaint (# 20), filed November 23, 2004. Responsive pleadings have all now been filed and the matter is ripe for disposition.
Plaintiff James Reding, a registered investment advisor working in the financial services industry, and his wife, Mary Katherine Reding, have brought this action against defendant alleging that based upon "fraudulent research analysis reports" published by the defendant and disseminated through "various means", plaintiff bought various stocks from other brokers and sustained losses. Plaintiffs now assert state-law claims for fraud (Count I); negligent misrepresentation (Count II); and violation of the Missouri Securities Act, Chapter 429[1] (Count III); as well as a federal claim for violations of Section 10-b of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (Count IV).
Defendant seeks to dismiss this amended complaint for failure to state a claim under Rule 12(b)(6) Fed.R.Civ.P., in connection with the "heighten pleading requirements" of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4, and for failure to state a claim for fraud with particularity as required under Rule 9(b) Fed.R.Civ.P. It avers, among other things, that plaintiffs have continued to fail to 1) allege any type of client relationship between the plaintiffs and defendant or that the plaintiff purchased the subject stocks through defendant during the relevant time-period; 2) allege or identify any misrepresentation in any identified analyst report upon which plaintiffs relied in making their stock purchases; 3) allege any facts to support any allegation that defendant acted with intent to defraud the plaintiffs; 4) allege any facts showing that plaintiffs were among a limited group of persons for whom defendant supplied investment information for use in any particular stock transactions (as required under Missouri law for a claim of negligent misrepresentation); and 5) allege any facts showing that any conduct by defendant proximately caused plaintiffs any damages in connection with the stock transactions listed on Exhibit A to the plaintiffs' amended complaint.
Before addressing the alleged pleading defects, the Court believes it necessary to briefly address an issue central to this dispute: the "SEC Complaint". As the primary factual basis for their amended complaint, the plaintiffs adopt and incorporate the complaint that the Securities Exchange Commission (SEC) filed against defendant in April 2003. The SEC Complaint charged defendant with violating certain rules and regulations of the New York Stock Exchange and the NASD, Inc. because defendant's research analysts *1116 were allegedly providing information and recommendations that were sometimes influenced by defendant's investment banking relationships.[2] The SEC Complaint resulted in two (2) consent orders: a consent order entered in the United States District Court for the Southern District of New York[3] (SEC Consent Order) and a consent order entered into with the State of Missouri[4] (Missouri Consent Order). The SEC Complaint does not charge the defendant with fraud or statutory violations, only with SEC rules violations regarding conflict of interest and undue banking investment influence in connection with defendant's research reports. The consent orders admit no past or present wrong by the defendant but simply enjoin the defendant from engaging in any acts which would result in conflicts of interest and/or undue banking investment influence in connection with its research reports.
The plaintiffs have incorporated the SEC Complaint as the "factual basis" for their allegations of fraud, negligent misrepresentation, violation of state securities law, and violation of federal securities law. Essentially, they are asking the Court to accept this document for the "truth of the matters asserted therein" in consideration of the instant motion. This the Court cannot do. Judicial notice of the SEC filings (as well as the Missouri Consent Order) is proper if neither party is offering the filings for the truth of the matters asserted therein. See, Kushner v. Beverly Enterprises, Inc., 317 F.3d 820, 831-32 (8th Cir.2003); Jakobe v. Rawlings Sporting Goods, 943 F.Supp. 1143, 1149 (E.D.Mo.1996); see also, In re Novastar Financial Securities Litigation, 2005 WL 1279033, *1 (W.D.Mo. May 12, 2005)[5]. Thus, the Court will consider the content of the SEC Complaint (and if necessary, the consent orders) for the purpose of determining what statements are contained therein, but not for the truth of the matter asserted with regard to these statements.
Independent of the SEC Complaint, the plaintiffs, "a registered investment advisor working in the financial services industry" and his wife, allege that research published by the defendant, an investment banking and securities firm with its headquarters in New York, was "made available to Plaintiff" through the plaintiffs' broker/dealer, D.E.Frey & Company. Plaintiffs' Amended Complaint, ¶ 66. Plaintiffs further allege that because plaintiff James Reding "brought Goldman Sachs' mutual funds a significant amount of investor money" by selling defendant's mutual funds to his clients, plaintiff James Reding was named to defendant's "Blue Chip Council" and "provided with" defendant's research reports. Finally, plaintiffs aver that research published by defendant was "disseminated" to plaintiff James Reding "by various means, including mail and via daily updates on Goldman Sachs' research website". Plaintiffs' Amended Complaint, ¶ 66.
Plaintiffs alleged that they relied upon unidentified research reports in deciding to purchase (again not through the defendant) the following securities: Exodus, Webvan, Priceline, Niku, Ask Jeeves, Insweb, *1117 Doubleclick, Excite@home, Agilent, Juniper Networks, Commerce One, Checkpoint Software, Yahoo, AOL, Amazon, Ebay, Nextel, JDS Uniphase, Network Appliance, "and others". Amended Complaint, ¶ 66.[6] Plaintiffs aver that the unidentified research reports upon which they relied to buy securities (either as listed in the Amended Complaint or in Exhibit A) contained "false and misleading information concerning the respective securities and companies referred to therein." and reference the SEC Complaint, the SEC Consent Order, and the Missouri Consent Order. Amended Complaint, ¶ 67. Plaintiffs do not specify what information was "false and misleading".
Finally, plaintiffs allege that the "false and misleading research reports", "had the intended effect of driving up demand and the price of said securities" by "concealing the true value of said securities from Plaintiffs in particular and the investing public in general." Amended Complaint, ¶ 68. Plaintiffs alleged they would "never had purchased the securities at issue, and not suffered the damages" when the market prices of these securities decreased once "Plaintiffs and the investing public learned the truth about these companies and Goldman Sachs' research reports." Amended Complaint, ¶ 68.
In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir.1986). The court must accept the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving party, dismissing the complaint only if "it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, supra, 355 U.S. at 45-46, 78 S.Ct. 99; see also, Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1062 (8th Cir.2005). "Although the pleading standard is liberal, the plaintiff must allege facts  not mere legal conclusions  that, if true, would support the existence of the claimed torts." Moses.com, at 1062 citing Schaller Tel. Co. v. Golden Sky Sys., 298 F.3d 736, 740 (8th Cir.2002).

Common Law Fraud
Under Missouri law, the elements of an action for fraudulent misrepresentation are: 1) a false, material representation; 2) the speaker's knowledge of its falsity or his ignorance of its truth; 3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the statement; 5) the hearer's reliance on its truth; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately caused injury. Moses.com, at 1064; Clearly Canadian Beverage Corp. v. American Winery, Inc., 257 F.3d 880, 890-91 (8th Cir.2001); Constance, et. al. v. B.B.C. Development Co., 25 S.W.3d 571, 580 (Mo.App.2000); Arnold v. Erkmann, 934 S.W.2d 621, 626 (Mo.App.1996); Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 939 (Mo.App.1996). Failure to establish any one of these elements is fatal *1118 to a fraud claim. Moses.com, at 1064; Clearly Canadian, at 891; Constance, at 580; Arnold, at 626. "Fraud may be established by circumstantial evidence; however, it may not be presumed, and a party's case will fail if he can show only facts and circumstances which are equally consistent with honesty and good faith." Clearly Canadian, at 891 quoting Bank of Kirksville v. Small, 742 S.W.2d 127 (Mo.1987); see also, Moses.com, at 1064.
In addition, pursuant to Rule 9(b) Fed.R.Civ.P., all allegations of fraud must be stated with particularity. To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir.1982); see also, Wiley v. Mitchell, et. al., 106 Fed.Appx. 517, 521-22 (8th Cir.2004)(unpublished). Compliance with the particularity requirements of Rule 9 requires plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." In re BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo.1999) (citation omitted). "[C]onclusionary allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir.1995).
Plaintiffs argue that they have generally met the requirements of Rule 9(b) by referencing the SEC Complaint. This is not sufficient to meet the particularity requirements of Rule 9(b) for several reasons. Firstly, the SEC Complaint alleged SEC rules violations and certain conflicts of interest, not fraud. Secondly, the only research report identified by both the SEC Complaint and the plaintiffs' Amended Complaint is in connection with Exodus stock; however, plaintiffs contend they bought the subject Exodus stock on April 12, 2000 (Exhibit A to the Amended Complaint), yet the SEC Complaint (which the plaintiffs have incorporated and adopted) clearly refers only one research report in connection with Exodus and it was published on April 27, 2001  over one year after the plaintiffs allege they bought the stock.
Apparently conceding that the Amended Complaint fails to set forth specific circumstances constituting fraud, plaintiffs argue that they do not need to allege any particular misrepresentations because their allegations "portray a complex scheme and artiface to defraud the general investing public." Plaintiffs' Response in Opposition to the Defendant's Motion to Dismiss (# 23), pg. 4.[7] However, the plaintiffs' allegations rest verbatim upon the SEC Complaint, which once again, did not allege any "complex scheme and artiface to defraud the general investing public" but only violations of certain securities regulations and rules relating to conflicts of interest. Furthermore, alleging such a scheme still does not excuse plaintiffs of meeting the particularity requirements of Rule 9(b). Plaintiffs have completely failed to provide any particulars about the allegedly "false and misleading information" insofar as they have not only failed to identify such information, but have failed to identify the reports which contained such allegedly "false and misleading information". Furthermore, they have failed to demonstrate why such information was false and/or misleading at the time the representations were *1119 made. They further fail to illuminate upon how "Goldman Sachs knew that the representations it was making in the research reports were false and misleading." Amended Complaint, ¶ 71.
Furthermore, plaintiffs wrongly contend that they do not have to allege any "intent to defraud" under Missouri law. They aver that simply stating "[i]n issuing these research reports, Goldman Sachs intended that Plaintiffs and others rely thereon in making their investment decisions ..." (Amended Complaint, ¶ 72) is sufficient under Missouri law. Such a statement is not sufficient because plaintiffs have failed to allege any facts that could support an inference that any unidentified research report[8] was directed towards them with the intent that they rely on any particular statement within it when making an investment decision. Even if any one of the unidentified research reports did contain a misrepresentation, it would not amount to a fraudulent misrepresentation without some facts that suggest a specific intent on the part of defendant to target the plaintiffs. See, Moses.com, at 1064.
Finally, plaintiffs fail to allege any facts demonstrating their damages. They allege that they bought stock in reliance on defendant's research reports and were thereby damaged because the "false and misleading information" contained in the reports artificially inflated the market price of the subject securities. However, plaintiffs fail to detail how the reports inflated the market price of the securities or how the reports caused a decrease in the value/price of the subject securities. The Amended Complaint is so vague as to the damages alleged that it, as well as Exhibit A, fails to plead and/or document these "losses" because no dates are given as to when the subject securities were sold nor at what price.[9]
In conclusion, the Court finds that plaintiffs have failed to allege any facts which demonstrate that any specifically identified research report contained (again) specifically identified false and/or misleading information that was targeted to the plaintiffs with the known intention to facilitate a purchase by the plaintiffs of a particular stock. Vague allegations bootstrapped on the SEC Complaint (as well as the SEC Consent Order and the Missouri Consent Order) do not meet the particularity requirements of Rule 9(b) and do not adequately allege the essential elements of a fraud claim under Missouri law.

Negligent Misrepresentation
To state a claim for negligent misrepresentation, the plaintiffs are required to allege facts that support the following elements: 1) the defendant supplies or omits information in the course of business or because of some pecuniary interest; 2) due to the defendant's failure to exercise reasonable care, the information was false; 3) the information was provided intentionally by the defendant to the plaintiff, as a member of a limited group, in a particular business transaction; 4) the plaintiff justifiably relied on the information; and 5) the plaintiff suffered a pecuniary loss. Moses.com, at 1065; Clearly Canadian, *1120 at 893; Gurley v. Montgomery First National Bank, 160 S.W.3d 863, 867 (Mo.App.2005); Kesselring v. St. Louis Group, 74 S.W.3d 809, 813 (Mo.App.2002). Failure to allege and prove any one of the essential elements of negligent misrepresentation is fatal to recovery. Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc., 109 S.W.3d 200, 206 (Mo.App.2003). Furthermore, in Missouri, a claim for negligent misrepresentation cannot arise from a statement of the defendant's future intent because "it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions. Even if the speaker is merely uncertain regarding the truth of the statement of future intention, the statement is fraudulent rather than negligent because the speaker is ignorant of the statement's truth." Clearly Canadian, at 893 quoting Hoag v. McBride & Son Inv. Co., 967 S.W.2d 157, 174 (Mo.App.1998).
Plaintiffs have failed to allege sufficient facts to support the required elements of falsity, reliance, and proximate injury as with their fraudulent misrepresentation claim. Essentially, since plaintiffs have failed to identify a single representation in any identified research report, consequentially, they have failed to plead any facts supporting the allegation that such representation was indeed "false".
Moreover, plaintiffs have failed to allege sufficient facts showing that the alleged misrepresentation was provided intentionally by the defendant to the plaintiffs, as members of a limited group of people, in a particular business transaction. Firstly, plaintiffs were not clients of the defendant and have not (and cannot) allege that any of the subject stocks were bought by them through the defendant. Plaintiffs attempt to circumvent this fact by claiming that they do not need to show that the alleged negligent misrepresentation was in connection with a "particular business transaction" because they are alleging "a scheme to defraud the market". As addressed earlier by the Court, plaintiffs have failed to allege sufficient facts demonstrating that such a scheme existed in connection with the unidentified false and misleading information contained in the unidentified research reports.
Secondly, the plaintiffs' argument that plaintiff James Reding belonged to a "limited and select" and "exclusive" group (the "Blue Chip Council") that was entitled to receive "investment research reports which were not generally available to the investing public" and enjoyed the "privilege of special access to investment research"[10] contradicts the allegations in the Amended Complaint wherein plaintiffs allege that they had access to these unidentified research reports through their own broker and through defendant's public website[11]. Thus, if plaintiff James Reding belonged to a limited group of investors with special access to these unidentified research reports, then how can plaintiffs support their allegation that the "false and misleading information" was so widely disseminated that the market price of the subject securities was artificially inflated as part of a "scheme to defraud the market"? Such inconsistencies are fatal to the plaintiffs' negligent misrepresentation claim.[12]

*1121 Missouri Securities Act

Count III of the plaintiffs' Amended Complaint alleges violations under Missouri's securities law. The parties dispute which of Missouri's securities acts is applicable to the plaintiffs' state securities fraud claim: Missouri Securities Act, Chapter 409, R.S.Mo. (1995)(as amended) or the Missouri Uniform Securities Act of 2003, §§ 409.1-101 et. seq. It really doesn't matter which one is applicable because under either Count III of the plaintiffs' Amended Complaint fails.
Plaintiffs contend that Count III is brought pursuant to the Missouri Securities Act, §§ 409.101 et. seq. because their stock purchases occurred prior to September 1, 2003, the effective date of the Missouri Uniform Securities Act of 2003, supra. Assuming this to be true, then the plaintiffs' claim under the Missouri Securities Act is time-barred. As to the plaintiffs' claim under the Missouri Securities Act, §§ 409.101 et. seq., the relevant limitations period is three (3) years. Section 409.411(f), R.S.Mo.(1995)(as amended). Section 409.411(f) specifically provides that its three (3) year limitations period begins to run at the time of the "contract of sale" or "the rendering of the investment advice". "Furthermore, where a statute of limitations is a special one and not included in the general chapter on limitations, as in this case, its running cannot be tolled because of fraud, concealment, or any other reason not provided in the statute itself." Norden v. Friedman, 756 S.W.2d 158, 163 (Mo.1988) (citations omitted); see, Nerman v. Alexander Grant & Company, 1990 WL 64826 (W.D.Mo.1990); see also, Rose v. Arkansas Valley Environmental & Utility Authority, 562 F.Supp. 1180, 1197-98 (W.D.Mo.1983)[13].
In the instant case, plaintiffs have specifically alleged that the subject stocks were all bought in 2000 (Exhibit A) after reading the allegedly "false and misleading" research reports; thus, it is abundantly clear that both the purchase of the stocks and the "rendering of investment advice" occurred in 2000 or earlier. Since the plaintiffs filed their original complaint in state court on or about July 26, 2004 and same was removed to federal court on or about August 23, 2004, Count III as alleging a claim under the Missouri Securities Act, §§ 409.101 et. seq. is time-barred.
Furthermore, under the Missouri Securities Act, §§ 409.101, the alleged fraud must occur "in connection with the offer, sale or purchase of any security", and applied only to a person "who receives, directly or indirectly, any consideration from another person for advising the other person as to the value of securities." § 409.102. Plaintiffs were not clients of the defendant during the relevant time-period. Plaintiffs do not (and cannot) allege that defendant offered or sold any securities to plaintiffs nor that it received any consideration from the plaintiffs "for advising as to the value of securities".
*1122 Assuming that Count III falls under the provisions of the Missouri Uniform Securities Act of 2003, §§ 409.1-101 et. seq., the claim still fails. The Missouri Uniform Securities Act of 2003 provides for a cause of action for purchasers of securities only against certain types of defendants: a seller of securities may be liable to its purchaser (§ 409.5-509(b)); a securities broker-dealer may be liable to its client/customer (§ 409.5-509(d)); and a person that receives directly or indirectly any consideration for providing investment advice (§ 409.5-509(e) and (f)). The plaintiffs' Amended Complaint fails to allege any of these relationships. Plaintiffs do not contend that they were customers or clients of defendant. Plaintiffs clearly allege that their broker/dealer during the relevant time-period was "D.E. Frey". Plaintiffs do not allege that defendant provided them investment advice in return for consideration.
Without any credible legal authority, this Court will not interpret a state statute as broadly as the plaintiffs wish it to do so, either under the Missouri Securities Act, §§ 409.101 et. seq. or the Missouri Uniform Securities Act of 2003, §§ 409.1-101 et. seq. Count III fails to state a claim under Missouri securities law.

Federal Securities Law  Section 10(b) and Rule 10b-5
In Count IV of their Amended Complaint, plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Section 10(b) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of securities. Section 10(b) forbids (1) the "use or employ[ment] ... of any ... deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations". Dura Pharmaceuticals v. Broudo, ___ U.S. ___, 125 S.Ct. 1627, 1630-31, 161 L.Ed.2d 577 (2005) citing 15 U.S.C. § 78j(b); see, Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P., 395 F.3d 851, 853-54 (8th Cir.2005); In re: K-tel International, Inc. Securities Litigation, 300 F.3d 881, 888 (8th Cir.2002); In re: Navarre Corp. Securities Litigation, 299 F.3d 735, 741 (8th Cir.2002). Rule 10b-5 forbids, among other things, the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made... not misleading." Dura Pharmaceuticals, 125 S.Ct. at 1631 citing 17 C.F.R. § 240.10b-5 (2004).
Private securities fraud actions brought under Section 10(b) and Rule 10b-5 require the pleading and showing of these elements: 1) a material misrepresentation or omission; 2) scienter (a wrongful state of mind); 3) a connection with the purchase or sale of a security; 4) reliance or "transaction causation"; 5) economic loss; and 6) "loss causation" or a causal connection between the material misrepresentation and the loss. Dura Pharmaceuticals, 125 S.Ct. at 1631; see Ferris, Baker Watts, at 854; K-tel, at 888; Navarre, at 741. Since Section 10(b) and Rule 10b-5 actions are grounded in fraud, the more stringent pleading standards of Rule 9(b) Fed.R.Civ.P. are applicable. In re: NationsMart Corp. Securities Litigation, 130 F.3d 309, 320 (8th Cir.1997); In re: BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo.1999); Jakobe v. Rawlings Sporting Goods Co., 943 F.Supp. 1143, 1152 (E.D.Mo.1996).
The Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4, embodies the pleading requirements of Rule 9 Fed.R.Civ.P. Ferris, Baker Watts, at 854; K-tel, at 889; see Navarre, at 742 (given that the PSLRA embodies the pleading requirements of Rule 9, plaintiffs do not need to meet the requirements of *1123 both, and the PLSRA supercedes; i.e. under Rule 9 state of mind can be averred generally; however, under the PLSRA, both falsity and scienter must be pleaded with particularity). Complaints brought under Section 10(b) and Rule 10b-5 are governed by special heightened pleading standards adopted by Congress in the PSLRA. These heightened pleading standards are unique to securities actions and were adopted by Congress in an attempt to curb abuses of securities fraud litigation. Kushner v. Beverly Enterprises, 317 F.3d 820, 826 (8th Cir.2003) citing Navarre, at 741; see Amdocs, at 547 citing Navarre, at 741.
The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." Kushner, at 826; Navarre, at 741-42; 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Kushner, at 826; Navarre, at 741-42; 15 U.S.C. § 78u-4(b)(2); see Ferris, Baker Watts, at 854; K-tel, at 889. The Act requires that the allegations collectively establish a strong inference of the required state of mind. Kushner, at 826. Any complaint failing to meet these pleading requirements must be dismissed. Kushner, at 826; In re: BankAmerica Corp. Securities Litigation, at 988; 15 U.S.C. § 78u-4(b)(3)(A). Finally, the Reform Act requires the courts to disregard "catch-all" or "blanket" assertions that do not live up to the particularity requirements. Ferris, Baker Watts, at 853; Amdocs, at 547; K-tel, at 889; Kushner, at 824; Florida State Bd. of Admin. v. Green Tree, 270 F.3d 645, 660 (8th Cir.2001).
Defendant contends that plaintiffs have failed to meet the heightened pleading standard of the PSLRA in Count IV. It points out that the plaintiffs' Amended Complaint does not contain factual allegations concerning any of the elements of their common-law fraud and negligent misrepresentation; thus, the Amended Complaint is even more woefully deficient in pleading their allegations with the particularity required by the PSLRA. Plaintiffs' only response is that the remarkably similar cases decided in New York in which motions to dismiss for pleading deficiencies were granted should not be considered by this Court.[14] All those these cases are instructive, the plaintiffs' Count IV federal securities violations claim fails on it own merit.
The general allegations contained throughout the Amended Complaint, and in particular, Count IV are inadequate under the heightened pleading standard of the PSLRA. Plaintiffs assert that the defendant carried out "a plan, scheme and course of conduct that was intended to and did (a) deceive Plaintiffs and the investing public; (b) artificially inflate and maintain the market price of the securities covered by its research analysts; (c) cause Plaintiffs and others to purchase securities covered by its research analysts at artificially inflated prices." Amended Complaint, ¶ 81. In furtherance of this "fraud-on-the-market" scheme, plaintiffs aver that the defendant made "untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading" and that the statements/omissions *1124 were made "knowingly or recklessly". Amended Complaint, ¶ 82 and¶ 83.
The problem is that the plaintiffs have not identified a single research report or a single statement out of any unidentified research report which plaintiffs consider to be "statements of material fact". Without allegations of particular facts regarding these mysterious statements and/or analysts reports, plaintiffs have failed to demonstrate how the defendant knew of the "scheme" at the time they made these unidentified statements, or had "no reasonable basis in fact" for the recommendations allegedly contained in these unidentified analysts reports. "Mere negligence does not violate Rule 10-b." Ferris, Baker Watts, at 854 citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). "`[R]ote allegations that the defendants knowingly made false statements of material fact' fail to satisfy the heightened pleading standard of the Reform Act." Kushner, at 827-28 quoting Navarre, at 745.
Even though severe recklessness may violate Rule 10-b, plaintiff have also failed to allege any facts in particular demonstrating that any statement was made by the defendant in a reckless manner.
"Specifically, scienter may be demonstrated by severe recklessness involving `highly unreasonable omissions or misrepresentations' amounting to `an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' Recklessness, then, may be shown where unreasonable statements are made and the danger of misleading investors is so obvious that the defendant must have been aware of it."
Kushner, at 828 citing K & S P'ship v. Cont'l Bank, N.A., 952 F.2d. 971, 978 (8th Cir.1991); see also, Ferris, Baker Watts, at 854. "This level of recklessness requires that defendants make statements that they know, or have access to information suggesting, are materially inaccurate." Ferris, Baker Watts, at 854 citing Navarre, at 746.
Plaintiffs have failed to allege any facts relating to any identified statement in any identified analyst report which shows that defendant was aware or should have been aware of said statement misleading investors such as the plaintiffs. Furthermore, plaintiffs have failed to allege with any particularity that such statements were adopted by the defendant or attributable to the defendant in some way, such as when officials of a company "have, by their activity, made an implied representation that the information they have reviewed is true or at least in accordance with the company's views." Navarre, at 743 (liability of securities issuers based upon representations by third parties such as securities analysts).
Finally, the defendant's prior SEC Consent Order (or the Missouri Consent Order) cannot be utilized, in this case, to demonstrate defendant's knowledge. The consent orders dealt with alleged SEC rules and regulations violations, not fraud. These consent orders do nothing more than address certain SEC rules and regulations violations in connection with specifically identified research reports with connection to stocks not purchased by the plaintiffs. They cannot be used to demonstrate knowledge by hindsight or by psychic ability; i.e. if certain reports violated certain SEC rules and regulations, then all other reports must also and be part of a grandiose scheme to defraud. These kind of generalized allegations are not sufficient to meet the pleading requirements of the PSLRA. See, Kushner, at 829.
*1125 Under the PSLRA, a complaint must "state `with particularity' facts giving rise to a `strong inference' that the defendant acted with the scienter required for the cause of action." Kushner, at 826 quoting Green Tree Financial, at 654. Plaintiffs have failed to meet this pleading standard.
Finally, even under a "fraud-on-the-market" theory of liability, plaintiffs have failed to meet the heightened pleading standard of the PSLRA because they have not sufficiently plead the requisite element of reliance. "Reliance typically requires plaintiffs to prove that alleged misrepresentations induced them to do something different from what they would have otherwise done in making investment decisions." NationsMart Corp. Securities Litigation, at 321. Under a "fraud-on-the-market" theory, the element of reliance will be presumed based upon a sufficient allegation that the misrepresentation is material. Jakobe, at 1151. Reliance may be presumed under a "fraud-on-the-market" theory where the alleged materially misleading statement has "been disseminated into an impersonal, well-developed market for securities ...". NationsMart Corp. Securities Litigation, at 321 citing Basic, Inc. v. Levinson, 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Reliance may also be presumed in cases involving an alleged failure to disclose information to investors if the parties dealt directly with one another in face-to-face transactions, and the omitted information is shown to be material. NationsMart Corp. Securities Litigation, at 321.
Here, the plaintiffs have not adequately plead actual reliance because they did not allege specific facts showing that they relied upon any particular research report or any particular statement in any particular research report when making a decision to buy any one of the stocks listed on Exhibit A. See, NationsMart Corp. Securities Litigation, at 322. Furthermore, they have also failed to properly invoke any of the established presumptions of reliance. The Amended Complaint alleges no direct contact between the plaintiffs and the defendant so the plaintiffs cannot invoke the presumption of reliance based upon non-disclosure of material information. Id., at 322. Furthermore, plaintiffs have not alleged specific facts that any of the stocks they presumably bought after reading the unidentified research reports was traded on the NASDAQ or New York Stock Exchange. They have not alleged specific facts showing that a large number of people could buy or sell the stock; that trading information on the stock was widely available; and/or that the market was rapidly reflected new information in price. Id., at 322. Finally, plaintiffs have not alleged specific facts indicating that if the defendant had not made the unidentified allegedly fraudulent statement(s), there would not have been any market for any of the securities listed on Exhibit A. Id., at 322.
Lastly, the plaintiffs have failed to allege specific facts demonstrating that the defendant's alleged fraud caused the plaintiffs' economic loss. A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss. Dura Pharmaceuticals, 125 S.Ct. at 1629; 15 U.S.C. § 78u-4(b)(4). In Dura Pharmaceuticals, supra., the United States Supreme Court considered what a plaintiff must allege and ultimately prove when establishing the element of "loss causation". Firstly, the Court considered the fact that "[n]ormally, in cases such as this one" (i.e. fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss. The Court reasoned:
"For one thing, as a matter of pure logic, at the moment the transaction *1126 takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value. Moreover, the logical link between the inflated share purchase price and any later economic loss is not invariably strong. Shares are normally purchased with an eye toward a later sale. But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If, the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price might mean a later loss. But that is far from inevitably so. When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price. (The same is true in respect to a claim that a share's higher price is lower that it would otherwise have been  a claim we do not consider here.) Other things being equal, the longer the time between purchase and sale, the more likely that this is so; i.e., the more likely that other factors caused the loss."
Id., 125 S.Ct. at 1631-32. The Court went on to recognize that a higher purchase price "will sometimes play a role in bringing about a future loss"; and thus, an inflated purchase price suggests that "the misrepresentation `touches upon' a later economic loss". Id., 125 S.Ct. at 1632. However, the law requires that such a misrepresentation cause a loss, not just merely "touch upon" a loss. Id., 125 S.Ct. at 1632.
The Supreme Court continued to reason that the PSLRA requires specificity in securities fraud complaints because securities statutes "seek to maintain public confidence in the marketplace" and do by providing for private securities fraud actions; however, "the statutes make these latter actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentation actually cause." Id., 125 S.Ct. at 1633.
Given what a private securities fraud action must prove as to "loss causation", the Supreme Court held that simply alleging the existence of an "artificially inflated purchase price" is not itself a relevant economic loss. That alleging nothing more than the plaintiffs paying "artificially inflated prices" for certain securities, and that as a result plaintiffs suffered "damages" is not sufficient to adequately plead loss causation. Id., 125 S.Ct. at 1634. A complaint that alleges only this fails to provide a defendant with notice of what the relevant economic loss might be or of what the causal connection might be between the loss and the alleged misrepresentation. Id., 125 S.Ct. at 1634. Such lack of notice and causal connection is exactly the kind of harm the securities statutes were designed to eliminate. Id., 125 S.Ct. at 1634.
In the present case, the plaintiffs do no more than allege that "material misrepresentations and/or omissions" were done "knowingly or recklessly", and as a result, "the market price of the securities covered by Goldman Sachs was artificially inflated." Amended Complaint, ¶ 83 and ¶ 84. Plaintiffs further allege that "[h]ad Plaintiffs known of the misrepresented and/or omitted material facts, Plaintiffs would not have purchased the securities at issue." Amended Complaint, ¶ 85. Interestingly, the Amended Complaint does not specify the alleged loss particular to the "artificially *1127 inflated purchase price" of any of the stocks listed on Exhibit A. Exhibit A lists for sixteen (16) identified stocks (Yahoo is listed three times[15] and Priceline is listed twice[16]) the shares purchased, the purchase date, the "cost basis", sale proceeds, and the "loss". Exhibit A does not provide the stock price as of the date of purchase, the stock price as of the date of sale, or the sale date for any of the listed stocks. The Amended Complaint does not identify any particular alleged misrepresentation which plaintiffs relied upon to purchase any particular stock. Thus, plaintiffs have failed to adequately allege that any particular misrepresentation proximately caused the economic loss associated with any particular stock transaction.
Under the PSLRA, the circumstances of the fraud must be stated with particularity, including "such matters as the time, place and contents of false representations, as well as, the identity of the person ... and what was obtained or given up thereby... This means the who, what, when, where, and how." K-tel, at 890 quoting Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir.1997). The plaintiffs' failure to plead their allegations of fraudulent misstatements and omissions with particularity is insufficient and fatal under the PSLRA.
NOTES
[1] There is apparently some dispute as to whether Count III is brought pursuant to the Missouri Securities Act, Chapter 429 or the Missouri Uniform Securities Act of 2003, § 409.1-101 et. seq. R.S.Mo.
[2] The SEC Complaint is not only incorporated into the plaintiffs' amended complaint but is provided by defendant as Exhibit B to its memorandum in support of the instant motion.
[3] Exhibit C attached to defendant's memorandum in support of the instant motion.
[4] Exhibit D attached to defendant's memorandum in support of the instant motion.
[5] Although the Court prefers not to cite to unpublished opinions, it will do so only in the rare instances wherein the opinion provides significant guidance to the Court in reaching its determinations.
[6] In the Amended Complaint, plaintiffs refer to Exhibit A. Exhibit A does not match up with the Amended Complaint. Exhibit A lists only these same securities as the Amended Complaint: Amazon, Doubleclick, Ebay, Exodus, Niku, Priceline, Yahoo, Ask Jeeves, Network Appliance, and Juniper Networks. Exhibit A lists these following securities which are not listed in the Amended Complaint: CMGI, EToys, Vertical Net, Rambus, Jabil Circuit, and World Com.
[7] In the future, plaintiffs' counsel shall number the pages of any and all pleadings filed with this Court.
[8] As stated before, plaintiffs have not identified any research report in connection with any of the stocks they have listed on Exhibit A or for that matter, in their Amended Complaint except perhaps the Exodus stock which the Court has previously addressed.
[9] Clearly, the plaintiffs have failed to allege facts sufficient to establish several of the noted elements of fraud under Missouri law; i.e., failure to allege a "false, material misrepresentation", failure to allege an intent to deceive, and failure to allege a "consequent and proximate injury". As for the remaining elements, the Court finds no need to address the inadequacy of the amended complaint to allege facts in support of these elements.
[10] Plaintiffs' Brief, pg. 6.
[11] Amended Complaint, ¶ 66.
[12] Not only have the plaintiffs pled inconsistent allegations regarding "fraud on the market" and negligent misrepresentation as to the element of provision of the allegedly false information to a member of a limited group in a particular business transaction, plaintiffs also have a fatal flaw as to reliance. The only research report ever mentioned in the Amended Complaint which matches one of the subject stocks is Exodus. However, as pointed out earlier, the research report referenced was published in April 2001, yet the plaintiffs allege that they bought the Exodus stock in April 2000. It would be impossible for the plaintiffs to have relied upon this research report (whether or not it contained "false" information) when they bought the stock since the research report had not yet been published.
[13] These cases dealt with the pre-1995 amendment to § 409.411 which provided for a two (2) year limitations period to begin running at the time of the "contract of sale". § 409.411(e)(1969). The 1995 amendment changed the limitations period to three (3) years and added the language "or the rendering of investment advice" in addition to the "contract of sale" as the starting point for the limitations period. However, the substantive analysis of § 409.411 still remains the same.
[14] These decisions are: Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2nd Cir.2005); ATSI Communications v. The Shaar Fund Ltd., 357 F.Supp.2d. 712 (S.D.N.Y.2005); In re: Merrill Lynch Research Reports Securities Litigation, 273 F.Supp.2d. 351 (S.D.N.Y.2003); see, In re: Merrill Lynch Tyco Research Securities Litigation, 2004 WL 305809 (S.D.N.Y.2004).
[15] It appears that a different number of shares of Yahoo was purchased at different times.
[16] It appears that a different number of shares of Priceline was purchased at different times.