**Diane M. BERMAN,**
**Plaintiff-Respondent,**

v.

**Joyce REGNA, et al.,**
**Defendants-Appellants.**

No. 50677.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer Denied March 25, 1987.

Application to Transfer Denied May 19, 1987.

Stephen C. Murphy, Clayton, for defendants-appellants.

Susan H. Mello, Clayton, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant Bomar Real Estate Company appeals from a judgment against it of $12,-000 actual damages and $1,000 punitive damages based upon a jury verdict in an action for fraudulent misrepresentation. We reverse.

Plaintiff purchased a residence in St. Louis County in August 1979 from Joyce Regna and Gary Weirich, sister and brother. The property was listed through defendant Bomar as the agent. Kay Wickiser was the saleswoman who handled the sale. She was no longer with defendant Bomar at the time of trial. Plaintiff viewed the property on two occasions with Wickiser and directed her to prepare a sale contract contingent on F.H.A. financing. While in the office plaintiff inquired about having a termite inspection done. She was advised by Wickiser that she could have her own done but that one would be done for F.H.A. because they would not approve the financing without it. Plaintiff, for financial reasons, opted to rely upon the inspection done for F.H.A. Wickiser made arrangements for the inspection with Midwestern Pest Control.

In her petition plaintiff alleged that the report submitted by Midwestern indicated no present or past termite infestation and that defendant knew or should have known that in fact the premises had active and prior termite infestation. A copy of the report from Midwestern was attached to the petition but was never introduced into evidence at trial. Within a week after moving into the residence plaintiff discovered extensive termite infestation and damage. She then brought this action against the sellers, Bomar, and Midwestern Pest Control. She subsequently dismissed Midwestern because of "limitation problems" not otherwise identified or discernible from the record. The jury found in favor of the sellers, and in favor of Bomar on a second count based upon breach of fiduciary duty in failing to provide all material information it had concerning the premises. Plaintiff has not appealed those verdicts. The theory of recovery submitted upon which the verdict was returned against Bomar required a finding that defendant "represented that the residence was suitable for residential use as intended by plaintiff and not subject to prior termite damage." This theory is one of affirmative misrepresentation as contrasted to a duty-violative failure to disclose which is the theory of plaintiff's second count against Bomar upon which the jury found for Bomar. See *Maples v. Charles Burt Realtor, Inc.,* 690 S.W.2d 202 (Mo.App.1985) 1.c. 208.

Bomar challenges the submissibility of plaintiff's case. We must review the evidence in the light most favorable to plaintiff and give her all favorable inferences which may be drawn therefrom. *Franklin v. Mercantile Trust Company, N.A.,* 650

S.W.2d 644 (Mo.App.1983) [5]. There are nine elements to a fraud case which have been frequently set forth and need not be repeated in entirety. They include a representation, its falsity, the speaker's knowledge of its falsity or of its truth, and reliance. See *Sofka v. Thal,* 662 S.W.2d 502 (Mo. banc 1983) [2]. Fraud is never presumed and each element must be supported by evidence which points logically and convincingly to the conclusion of fraudulent misrepresentation. *Brown v. Pritchett,* 633 S.W.2d 294 (Mo.App.1982) [1].

It should first be noted that plaintiff's evidence and trial theory varied considerably from her petition. From the petition as a whole it is apparent that plaintiff was alleging that all defendants had conspired to obtain a termite report showing the residence to be "clean" when all in fact knew it was not. There was no evidence at trial to support this theory. Instead at trial plaintiff attempted to establish that the sellers and Bomar in an affirmative way led her to believe that the structure was termite free. She never, however, directly asked the question, nor did any defendant represent that the home was free of termite infestation and damage.

Plaintiff asked Wickiser about certain indentations she noticed in the doors and walls. Wickiser "led her to believe" these resulted from marital arguments of the occupants. There was no evidence that the noted indentations were signs of termite damage, that they were not the result of marital rows, or that Wickiser was untruthful in her answer. At the time of preparation of the sale contract, plaintiff asked Wickiser about having a termite inspection made. Wickiser replied that plaintiff could have one made at her expense but that in any event one would be made as a pre-condition to F.H.A. approval of the financing. The evidence clearly demonstrates that these statements were truthful and that in fact a termite inspection by a licensed company was made. The F.H.A. approved the loan after requiring two minor improvements to the structure, neither relating to termite damage. These are the only affirmative statements by Wickiser which are established by the evidence and they clearly do not establish an affirmative representation, its falsity, or knowledge of its falsity.

Plaintiff, however, attempts to bring this case within *Maples v. Charles Burt Realtor, Inc., supra.* In 1977 the residence involved here had a termite infestation problem. The owners hired Brown Termite Control to treat the infestation. That was done and Brown issued a five year renewable guarantee covering the treatment. Papers received from Brown were turned over by Weirich to Wickiser who was advised that there had been a termite problem at one time and "that they had been taken care of...." The Brown papers contain a proposal for termite control service, a termite control agreement containing the guarantee, a paid bill for the termite treatment, and several pages of essentially advertising material. These papers were given to plaintiff by Wickiser at the time of closing the purchase. The proposal for service is a printed form with blanks to be filled in. The pertinent parts of that document state (those portions underlined were filled in by handwriting on the printed form):

"1. We submit herewith the following proposal covering the Termite control Service for building, or buildings, located at, or known as *residential* which we inspected under date of *July 5–77* and showed evidence of subterranean termite infestation and damage.

2. We will treat the above building, or buildings, for Termite Control to control present infestation of subterranean termites and control any further infestation for a period of 5 years in accordance with terms stipulated and the following structural changes, [left blank].

3. We propose to furnish labor, equipment, material and chemicals required to treat the above described building, including structural changes listed above for the sum of *three hundred ninety ($390.00)* dollars...."

At no place in the document is there any indication of specific damage to the premises and the place where structural changes needed are to be set forth is blank. The

only reference to damage is in the printed portion of this form contract and it is reasonable to assume that any termite presence would involve some damage, and the usage in the proposal would so indicate. It is also reasonable to assume that if damage of any consequence is present it would be identified under structural changes needed. While an employee of Brown testified he remembered the house and that it had considerable structural damage, there is no evidence this was communicated to Wickiser. The Brown papers did communicate the information that in July 1977 termites had been found in the premises, that treatment had been made, and that a five year guarantee was in effect. Those papers did not reflect structural damage from the termites, the basis of plaintiff's claim of damages. Wickiser at no time made any representation that the residence had never had termites and she was never asked about prior infestation or damage. We are unable to find any misrepresentation by Wickiser or any untruthfulness in anything she said. To the extent she may have had an affirmative duty to disclose the Brown papers, and we do not rule on that, the jury found for Bomar.

*Maples* is distinguishable. There the broker obtained a termite inspection pursuant to a sales contract. That inspection showed active infestation. That sale failed because of financing problems. Two months later a second purchaser specifically inquired about a termite inspection. He was advised by the same broker that "he already had one done, don't worry about it." The broker was specifically aware that no treatment had occurred after the first inspection. A second inspection was made which showed no damage or need for treatment. Only the second report was given to the purchaser. Under those facts the court found an affirmative misrepresentation by the broker that the second "clean" report was the report to which he had earlier referred, when in fact he was referring to the "dirty" report.

In our case Wickiser never misrepresented the first report, she furnished it to plaintiff at the time of closing, she was aware that treatment had occurred after the first report, and she had no information that structural damage had occurred. We are unable to find proof of the elements of misrepresentation.

Judgment against Bomar Real Estate Company is reversed.

DOWD and REINHARD, JJ., concur.