Patrick RICHARDS, Appellant,

v.

**ABN AMRO MORTGAGE GROUP, INC., Respondent.**

No. WD 68580.

Missouri Court of Appeals, Western District.

June 17, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2008.

Application for Transfer Denied Sept. 30, 2008.

**604**

Alan M. Dietchman, Liberty, MO, for Appellant.

Richard L. Martin, Kansas City, MO, for Respondent.

Before JOSEPH M. ELLIS, P.J., LISA W. HARDWICK and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, Judge.

Patrick Richards appeals the trial court's judgment that a seller of property did not have a duty to disclose a prior sale of a portion of the property. He claims the seller had such a duty because it had superior knowledge not within his fair and reasonable reach. The point is denied, and the judgment is affirmed.

## Facts

The city of Kansas City, Missouri, planned to widen North Oak Trafficway from a two lane road to a four lane road. In lieu of condemnation, it sought to purchase the land fronting North Oak Trafficway. On August 20, 2003, the city purchased the thirty feet of land immediately adjoining North Oak Trafficway of the property located at 9803 North Oak Trafficway. ABN AMRO Mortgage Group, Inc. (AMRO) held the first mortgage on the property. The city paid a total of $10,200 for the property, of which $5,680 was paid to AMRO. In exchange, AMRO signed a partial deed of release on October 31, 2003, for the property sold to the city. The partial deed of release was recorded in Clay County, Missouri. The remainder of the purchase money went to the then owner of the property. The then owner executed a general warranty deed to the city for the thirty feet purchased; this deed was also recorded. Thereafter, the owner defaulted on the loan, and AMRO obtained ownership of the property through a foreclosure.

Patrick Richards moved from Ohio to the Kansas City area in March 2004. He subsequently retained a real estate agent to act as his buyer's agent in his search for a house to purchase. The agent showed Mr. Richards several properties, including the property located at 9803 North Oak Trafficway (the Property). At the time he viewed the Property, there was not yet any physical indication that the sale to the city had occurred some two and a half years earlier or that the city intended to widen the street. Mr. Richards purchased the Property on August 2, 2006.

The Property was advertised "as is, no seller disclosure." The real estate contract reviewed and signed by Mr. Richards contained language that there were no representations or warranties and that the Property was being sold as is, where is. The special warranty deed with the legal description of the Property contains the same disclaimers. Mr. Richards never spoke with anyone employed by AMRO or its real estate agent. He did not obtain a survey of the Property. He was aware that AMRO received title to the Property through a foreclosure.

After the sale closed, Mr. Richards learned of the prior sale of the thirty feet of land to the city. In addition to the thirty feet taken from the Property, Mr. Richards lost six trees and five bushes. He went from having a two lane road fronting the Property to a four lane road.

On November 15, 2005, Mr. Richards filed a lawsuit against AMRO, his real estate agent, and his agent's real estate agency. He settled his claim against the real estate agent and agency and dismissed them as defendants on January 9, 2007.

The trial court found that AMRO, a nonresident mortgage company, did not have a duty to disclose the prior sale of the thirty feet because it did not possess a superior knowledge of information that would not be reasonably available to Mr. Richards through ordinary diligence. It entered judgment accordingly on May 23, 2007. This timely appeal followed.

## Standard of Review

This case has a somewhat unusual procedural history. Mr. Richards settled his claim against his real estate agent and his agent's real estate agency and dismissed them as defendants. On August 21, 2006, AMRO filed a motion for summary judgment. On October 20, 2006, the motion was heard and denied. On November 1, 2006, AMRO filed a motion to reconsider, which was sustained on March 7, 2007. The motion for summary judgment was reheard on May 17, 2007. After argument, the trial court found there was no question of material fact and that AMRO did not have a duty to disclose because it did not possess superior knowledge. The trial court entered a judgment dismissing Mr. Richards' case with prejudice.

The hearing on the motion for summary judgment occurred the same day the trial on the merits of Mr. Richards' claims was scheduled. The following exchange occurred during the hearing:

> [AMRO's Counsel]: Your Honor, because this matter was set for trial for 2:30 this afternoon, we do have a stipulation of facts for the trial that we've agreed to and signed. We could file it if that would aid the Court.
>
> THE COURT: That would help. I didn't realize it was today.
>
> [Mr. Richards' Counsel]: Yes.
>
> [AMRO's Counsel]: Yes.
>
> THE COURT: All right. Well, I'll have a little time right now to look at this stipulation of facts as well as—*basically we are doing the trial right now then unless there's a disputed fact that is to be offered in evidence.*
>
> . . . .
>
> THE COURT: Okay. Anything further?

[AMRO's Counsel]: Not at this time, Your Honor.

[Mr. Richards' Counsel]: No.

(Emphasis added.) No additional facts or evidence were offered.

The review of the transcript indicates that the trial court converted the hearing on the motion for summary judgment into the trial on the merits. Neither party objected to this. Moreover, all facts were admitted or stipulated and were before the court. Thus, this court views the procedural history to be that a trial on the merits occurred, and the court entered judgment based upon all offered evidence.

This is consistent with the standard of review advocated by Mr. Richards, the Appellant. He actually cites both *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which sets forth the standard of review for a court tried case, and *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993), which sets forth the standard of review for summary judgments.

■ "Appellate review of a court-tried case is generally governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which states, 'the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 446 (Mo. banc 2004) (citation omitted).

## Analysis

On appeal, Mr. Richards claims the trial court erred in finding AMRO did not have a duty to disclose the prior sale.[1] He claims AMRO had such a duty because it

---

1. Mr. Richards refers to a condemnation of the thirty feet of land. The city purchased the thirty feet in lieu of condemnation; the thirty feet at issue were not condemned.

had superior knowledge not within his fair and reasonable reach. The point is denied.

To make a submissible case of fraudulent misrepresentation, a plaintiff is required to prove nine essential elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007). Missouri courts have not recognized a separate tort of fraudulent nondisclosure. *Id.* "Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." *Id.*

"In nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Id.* " 'Whether or not a duty to disclose exists ... must be determined on the facts of the particular case.' " *Id.* (quoting *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo.App. W.D.1995)). "A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other." *Id.* " 'Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence.' " *Id.* (quoting *Bayne v. Jenkins*, 593 S.W.2d 519, 529 (Mo. banc 1980)).

"Similarly, a jury is empowered to find that the buyer has a right to rely on the seller to disclose where the undisclosed material information would not be discoverable through ordinary diligence." *Id.* (citing *Groothand v. Schlueter*, 949 S.W.2d 923, 930 (Mo.App. W.D.1997)(buyer may rely on seller where the facts are "peculiarly within the knowledge" of seller and "the truth is difficult for the buyer to ascertain")). "Thus, in a case of fraudulent nondisclosure ... the analysis of proof of a duty to disclose and of the right to rely collapses into a combined inquiry as to whether [the seller] had knowledge of undisclosed material information that [the buyer] would not have discovered through ordinary diligence." *Id.* at 765–66. "Even with superior knowledge, a duty to disclose will be imposed only if the material facts would not be discovered through the exercise of ordinary diligence." *Id.* at 766. "[W]hat type of investigation was reasonable is by its nature normally a factual inquiry and, thus, a jury question." *Id.*

"The concept of fraud liability based upon nondisclosure couches reliance in terms of the availability of the information to the plaintiff and the plaintiff's diligence." *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 60 (Mo.App. W.D.2001). "A plaintiff asserting fraud must show that the undisclosed information was beyond her reasonable reach and not discoverable in the exercise of reasonable diligence." *Id.*

A person is entitled to rely on a representation where (1) she lacks equal facilities for learning the truth; (2) where the facts are peculiarly within the knowledge of the speaker and difficult for the hearer to ascertain; (3) where the representation relates to latent defects; (4) where it would be necessary to employ a third person to make an examination in order to discover the truth because of the hearer's ignorance and inexperience; and (5) where the employment of an expert would be required.

*Id.*

Accurately framed by Mr. Richards in his brief, the "issue that lies at the

heart of this case is whether [AMRO] had a duty to disclose the loss of land in the front of the property due to the prior condemnation." As set forth, *supra,* AMRO had a duty to disclose if it had knowledge of undisclosed material information that Mr. Richards would not have discovered through ordinary diligence. Mr. Richards asserts both that AMRO had superior knowledge and that it was not discoverable through ordinary diligence.

Mr. Richards argues that AMRO was aware through its employees that the thirty feet had been sold to the city. AMRO never claims it was unaware that the thirty feet was sold. Instead, it claims Mr. Richards would have learned of this through the exercise of ordinary diligence.

Mr. Richards states in his brief that he "accepts the proposition that, in trial, he has the burden to show that the information was not discoverable with the exercise of reasonable diligence." He states that he is requesting an opportunity to present evidence on this point. Mr. Richards claims that evidence was not presented pertaining to whether he used ordinary diligence or what constitutes ordinary diligence in his situation. He asserts that all material facts were not in evidence.

In its motion for summary judgment, AMRO alleged multiple facts as being uncontroverted, including the fact that Mr. Richards did not allege that any employee or agent of AMRO made any representation of any kind to Mr. Richards or had any contact of any kind with Mr. Richards. Instead, the contact was Mr. Richards' buyer's agent communicating with AMRO's real estate agent. Mr. Richards admitted all facts alleged by AMRO. Mr. Richards alleged facts demonstrating that AMRO had knowledge that the thirty feet was sold to the city. AMRO admitted these facts. Thus, the motion for summary judgment went before the trial court

with all alleged facts having been admitted as uncontroverted.

Attached to the motion for summary judgment and Mr. Richards' response were various documents. These included the real estate contract for the sale of the Property to Mr. Richards and the contract executed between Mr. Richards and his buyer's agent. In addition, a stipulation of facts was submitted by the parties, including a stipulation of the following facts:

- A temporary easement in favor of the city was recorded in Clay County;
- A general warranty deed conveying the thirty feet to the city was recorded in Clay County;
- Mr. Richards knew AMRO obtained the Property through a foreclosure sale;
- The real estate contract indicated Mr. Richards was purchasing the Property as is, without representations or warranties;
- Mr. Richards never spoke with anyone employed by AMRO concerning the Property or sale of the Property;
- Mr. Richards never spoke with AMRO's real estate agent about the Property;
- Mr. Richards relied on statements about the Property made to him by *his* buyer's real estate agent; (Emphasis added.) and
- Mr. Richards did not obtain a survey of the Property.

During the hearing, the following exchange occurred:

THE COURT: It appears to me that neither of you have cited any particular fact which is in dispute in this case. It appears to me that the argument is over the duty to disclose, not a factual determination at this point. Any argument for that by either party?

[AMRO's Counsel]: No.

THE COURT: I'm looking for a particular fact that should be decided by somebody other than me. I'm not seeing a factual dispute.

[Mr. Richards' Counsel]: I think one of the things that has not been dealt with presented by the defendant is the issue of whether or not it's ordinary diligence to get the survey. Mr. Martin here talks that he had a right to get a survey, and no one denies that, the question being whether or not the general purchaser of real estate would get a survey or have any reason to obtain a survey when buying residential property.

I don't believe that ordinary diligence does require such a survey. When you buy property, you're on a residential street, quite often a lender would maybe require a mortgage survey to make sure the house is on the property, but generally people do not get surveys just because they're purchasing property.

I believe there is evidence regarding this issue that does need to be heard and decided.

[AMRO's Counsel]: I disagree. I think that falls in the same category as the issue of whether he should look at the record, the public record, to determine what's happened to your property in the past to determine what you're going to get and what is filed of record. That's not a factual dispute. I think that's a factor that could be taken into account by the Judge if the Court wants to review all of the facts to determine whether there's a duty to disclose.

. . . .

[Mr. Richards' Counsel]: Your Honor, my position is that when purchasing residential property, you are not in violation of due diligence by not getting a survey. I think that that's one of those issues the Court needs to hear testimony on.

THE COURT: Your theory is that the buyer is not negligent for not—

[Mr. Richards' Counsel]: For not getting the survey when buying.

THE COURT: Okay.

[Mr. Richards' Counsel]: . . . So I don't believe it's possible to do a blanket statement that in all cases an individual should get a survey. I think there is a question that it depends as to whether or not in this particular case a survey should have been required.

Additionally, Mr. Richards did get a title policy. Again, going to the particulars of this case, this is not a case where it's Lot 1 of Sunset Hills except for that portion. If you look at this legal description, there are four exceptions. Once the person knows what to look for, you may be able to find it, but apparently pieces have been taken out of this property all along so there is nothing in the legal description that should have set off alarms to Mr. Richards to go, "Oh, there's something here that needs specifically looking into, and I should get a survey to find out what's going on."

Additionally, in this particular case, Mr. Richards was new to the city, which the testimony will be that he arrived here in March. I think it was in May that he made the offer on the house. So he would have had no way of knowing through the paper or any other information regarding the North Oak widening.

So again, I think what we have here is a situation where in this particular case, the Court needs to look at the particular facts of this case in relationship to whether or not there was a duty to disclose and that the—

THE COURT: I agree. I think the entire issue in this case is whether or not the defendant in this case, the only defendant now, had a duty to disclose. As I understand it, your theory is that a

fraud was committed because of a non-disclosure where there was a duty to speak?

[Mr. Richards' Counsel]: Correct.

[Mr. Richards' Counsel]: But again, there are other issues too. This house has been standing for a while. There would be testimony that there were fences. Again, whether or not it's reasonable for someone to look at a property, and again a residential property, whether it's a meets [sic] and bounds description or not, look at it and see the fence and go, "This is what I'm getting. This is the assumption I'm making." I don't believe due diligence demands that every time you purchase such a property, that you need to get a survey done.

[AMRO's Counsel]: But that's not the point, Your Honor. The issue—

THE COURT: Yeah, I think the issue turns on a matter of whether or not in this case one or the other parties had some superior knowledge and one or the other parties, there was not the availability of that information to that other party. I don't know that due diligence is the term. Just ordinary diligence, would an ordinarily diligent buyer with a buyer's agent have discovered this.

. . . .

THE COURT: . . . Anything further from either party?

[Mr. Richards' Counsel]: No, Your Honor.

. . . .

[AMRO's Counsel]: Your Honor, because this matter was set for trial for 2:30 this afternoon, we do have a stipulation of facts for the trial that we've agreed to and signed. We could file it if that would aid the Court.

THE COURT: That would help. I didn't realize it was today.

[Mr. Richards' Counsel]: Yes.

[AMRO's Counsel]: Yes.

THE COURT: All right. Well, I'll have a little time right now to look at this stipulation of facts as well as—*basically we are doing the trial right now then unless there's a disputed fact that is to be offered in evidence.*

. . . .

THE COURT: Okay. Anything further?

[AMRO's Counsel]: Not at this time, Your Honor.

[Mr. Richards' Counsel]: No.

(Emphasis added.)

In essence, Mr. Richards complains the judgment was improper because he was not given the opportunity to prove that a buyer in his position would not have obtained a survey in the course of ordinary diligence. His argument must fail for multiple reasons. No party alleged a fact that was disputed; all facts were admitted or stipulated. While he indicated he would like the opportunity to present evidence during the hearing, he neglected to do so when given the opportunity. Furthermore, Mr. Richards focuses upon the fact that a buyer would not have obtained a survey. He ignores the other evidence that should have placed him on notice.

Documentation putting Mr. Richards on notice was found in the public record, which was available to Mr. Richards prior to his signing a contract for purchase. This documentation includes a recorded general warranty deed signed by the former owner of the Property conveying to the city the thirty feet of land at issue. In addition, AMRO recorded a release of the land sold to the city from the lien in its deed of trust. Finally, a temporary easement, recorded at the same time as the deed, contained language describing actions that would be taken with respect to the Property, including grading and sloping, construction of a driveway and sidewalks and the removal of fencing, trees and shrubs. These documents were all recorded in Clay County as public records

providing notice to Mr. Richards of events impacting the Property.

In addition, Mr. Richards knew before he purchased the Property that the legal description of the real estate was not a simple description. It was not a platted description; instead, it was a metes and bounds description with numerous exceptions. The last exception referenced a thirty foot strip of land. Mr. Richards also knew that AMRO acquired title to the Property through a foreclosure. The language in the real estate contract placed the burden on him to investigate the Property without assistance from AMRO. Paragraph 11 is titled "Property Purchased As Is" and goes on to expound that the seller is making no disclosures; the Current Condition Addendum states the Property is purchased "AS IS, WHERE IS." Mr. Richards had the right to have the real estate surveyed but, instead, relied on his own inspection of the real estate. Finally, Mr. Richards did not rely on AMRO to disclose; instead, he relied on *his* buyer's real estate agent to make disclosures about the Property.

As noted, *supra*, whether a seller had a duty to disclose must be determined on the facts of the particular case, and what type of buyer investigation would have been reasonable is normally a question of fact. In this case, the trial court had before it numerous admitted and stipulated facts. It inquired as to the existence of undisputed facts, and none were alleged. Moreover, it indicated it was conducting the trial and gave all parties an opportunity to present evidence; no additional evidence was submitted. Mr. Richards did not ask the court for additional time to gather or prepare evidence. Given this, it was not improper for the court to rule on the facts before it.

Mr. Richards focuses upon individual facts. He notes that the presence of a clause disclaiming warranties in a contract does not negate a pre-contractual duty to speak. *See Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 299 (Mo.App. S.D. 2002). He focuses upon whether a buyer would obtain a survey in his position. He neglects to appreciate the significance of all the facts collectively, including the recorded easement, general warranty deed, deed of release, and that he relied on his buyer's agent for information about the Property. These particular facts demonstrate Mr. Richards would have learned of the sale of the thirty feet through ordinary diligence. The court's judgment was not error.

The point is denied.

### Conclusion

As Mr. Richards would have learned of the sale of the thirty feet through ordinary diligence, AMRO did not have a duty to disclose the sale to him. Accordingly, the judgment was not error. The judgment is affirmed.

All concur.