In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

THOMAS DUNCAN AND LISA ) No. ED109582
DUNCAN, )
 )
 Appellants, ) Appeal from the Circuit Court
 ) of St. Charles County
v. ) Cause No. 1711-CC01148
 )
SAVANNAH, LLC D/B/A BERKSHIRE ) Honorable Michael J. Fargas
HATHAWAY HOME SERVICES, et al., )
 )
 Respondents. ) Filed: November 23, 2021

 Introduction

 Thomas Duncan and Lisa Duncan (Buyers) appeal the trial court’s summary

judgment in favor of Savannah, LLC d/b/a Berkshire Hathaway Home Services (Berkshire

Hathaway) and Teresa Wernimont (Wernimont) (collectively, Respondents) on their

claims for a violation of the Missouri Merchandising Practice Act (MMPA) and negligent

misrepresentation regarding statements Wernimont made and alleged omissions of

material fact during the purchase of Buyers’ home (the Property). Because we find genuine

issues of material fact exist regarding whether Wernimont omitted material facts or is liable

for false information provided by Sellers regarding water drainage issues on the Property,

we reverse.
 Background

 Buyers purchased the Property, a residential home in St. Peters, Missouri, from

Craig Nute (Nute) and Cathleen Nute (collectively, Sellers) on April 7, 2017. Wernimont

acted as the listing agent for Sellers and as an agent of Berkshire Hathaway, Wernimont’s

real estate broker. 1 Prior to the sale, in her role as Sellers’ agent, Wernimont created a

listing for the Property on the Multiple Listing Service for real estate agents (MLS), which

stated that “every detail ha[d] been addressed” and that the Property was “meticulously

maintained.” Additionally, Sellers prepared a seller’s disclosure statement regarding the

Property, which Wernimont reviewed and then forwarded to Buyers. As relevant here,

Sellers answered “no” to the following questions in the sellers’ disclosure statement:

 Are you aware of any soil, earth movement, flood, drainage or
 grading problems on the property or that may affect the
 property?

 Are you aware of any leaks in the pool or pool components?

 Are you aware of any defects relating to the pool or to any of the
 pool components?

 After Buyers took possession of the Property, Buyers alleged they immediately

experienced several problems including water in the basement, sump pump backups,

foundation problems, mold, grading and water drainage problems, and leaking from the

pool. In November of 2017, Buyers filed suit against Sellers and Respondents, alleging

that all parties made misrepresentations or omitted material facts regarding several aspects

of the Property. Buyers filed an amended petition in March of 2020, asserting claims of

breach of contract against Sellers, and claims of negligent misrepresentation and violations

1
 All alleged liability of Berkshire Hathaway in the petition flows from Wernimont’s actions as agent of
Berkshire Hathaway.

 2
of the MMPA against both Sellers and Respondents. Respondents moved for summary

judgment, arguing that Respondents were unaware of any alleged problems with the

Property and could not be held liable for misrepresentations or omissions in the seller’s

disclosure statement. As relevant here, the parties submitted the following evidence to the

trial court during summary judgment proceedings.

 Prior to the sale of the Property, Kenny Etling (Etling), who had previously

performed maintenance on the pool at the Property, performed an inspection of the pool in

March of 2017, at which Buyers and Sellers were both present. Buyers had requested their

own inspector, who appeared at the Property the day before Etling’s inspection, but Nute

would not allow Buyers’ inspector to perform an inspection because Nute did not want

someone he was not familiar with to open the pool during the colder months and potentially

cause damage to the pool. Buyers eventually agreed that Etling could perform the

inspection. Buyers inquired about the liner of the pool, which was nine or ten years old at

that point, and Etling said that it would be good for another two or three years. Etling also

verified that the pump, heater, fountains, slide, and skimmer were all in good working

order. Etling concluded, “There’s nothing wrong with this pool at all.”

 On April 1, 2017, six days before the sale of the Property, Joseph Denness

(Denness), who owns a house next to the Property, contacted Wernimont by telephone.

Denness memorialized this conversation in a letter dated April 3, 2017. 2 Denness noted

2
 The full text of this letter is as follows:

Dear MS Wernimont

I spoke with you on April 1, 2017 about the Property at #2 Greenfield owner, Craig Nute about the water
runoff. Craig has always been a [g]reat neighbor, and we have lived next to him for many years. I live next
door at #10 Country Creek Dr. In the past several years I have had water coming down from his yard into
my back yard and side of my home. Last summer it [was] running over my driveway and was a constant run
of water. I brought this to Mr. Nute’s attention and he apologized and immediately dug a trench and installed

 3
he had spoken to Wernimont about water runoff that had occurred “over the past several

years” from Nute’s yard into Denness’ back yard and onto the side of Denness’ home, as

well as “a constant run of water” over Denness’ driveway that had occurred the previous

summer. Denness added that when he brought the issue of water running over his driveway

to Nute’s attention, Nute dug a trench and installed a drainage pipe to the street. Denness

further stated that water ran out of the pipe “most of the summer and ceased when the pool

was shut down.” Denness stated Nute told him the water was coming from Nute’s sump

pump and was not associated with the pool, but Denness did not observe water running

through the winter or during rainy weather. Denness added that he had not experienced

any groundwater issues at his home, which was below the Property. Denness wanted to

ensure that the new owners of the Property would address any ongoing issues.

 Wernimont testified by deposition that after she spoke with Denness, she went to

the Property and discussed Denness’ concerns with Nute. Nute pulled up the cover of the

pool, and Wernimont observed water in the pool, which led Wernimont to conclude the

pool was not leaking. Nute also told Wernimont there were no issues with the pool and

drainage pipe to the street. Water ran out of this pipe most of the summer and ceased when the pool was shut
down.

I know you talked with Mr. Nute about this issue as he came over and talked to me about it on Saturday[,]
April 1, 2017 and was assuring me that this was water running from his sump pump and was not associated
with his in[-]ground pool. I would like to believe this but as I think about it there has been no evidence of
water running this past winter and with all the rain we have had I have not seen any evidence of water running.
Furthermore[,] I live below him and I have never had any groundwater issues and I don’t have a sump pump
and never have had any water in my basement.

I am writing all this as I still have concerns that this runoff could be associated with the pool and when it is
operational during the summer. Mr. Nute has always taken care of issues and my concern is if this problem
continues[,] will the new owners address this issue if it is not caused from groundwater or sump pump?

Thank You.

Joseph Denness

 4
that the issue was drainage from Nute’s sump pump. Wernimont took Denness’ letter to

her broker at Berkshire Hathaway, and her broker told her not to respond to the letter.

Wernimont did not disclose the letter to Buyers or Buyers’ agent.

 The trial court granted summary judgment in favor of Respondents, finding that

Wernimont, as agent for Berkshire Hathaway, did not make a misrepresentation or fail to

disclose any material fact because Denness’ letter contained only speculation and non-

expert opinion that the pool on the Property was leaking. The trial court further found that

Respondents took proper measures to ensure that the pool was not the source of the water

leakage. This appeal follows.

 Standard of Review

 Because the propriety of summary judgment is purely an issue of law, our review

of summary judgment is essentially de novo. State ex rel. Nixon v. Peterson, 253 S.W.3d

77, 84 (Mo. banc 2008) (citing ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply

Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)). We review the record in the light most

favorable to the non-moving party and accord such party the benefit of all reasonable

inferences from the record. Id.

 Summary judgment is appropriate where the material facts are not in dispute and

the moving party establishes a right to judgment as a matter of law. Mo. R. Civ. P.

74.04(c)(6) (2021). A defending party moving for summary judgment “need not controvert

each element of the non-movant’s claim in order to establish a right to summary judgment.”

Joseph H. Held & Assocs., Inc. v. Wolff, 39 S.W.3d 59, 62 (Mo. App. E.D. 2001). Rather,

a defending party can prevail by defeating any one of the elements of the cause of action,

either by showing undisputed facts that negate such element, or by showing that the non-

 5
movant will not be able to produce evidence sufficient to establish such element after an

adequate period of discovery. See id.

 Discussion

 In Buyers’ sole point on appeal, they argue that the trial court erred in granting

Respondents’ motion for summary judgment because genuine issues of material fact exist

regarding Buyers’ claims for a violation of the MMPA and negligent misrepresentation.

Because we find the trial court’s judgment overlooks material facts regarding water

drainage issues on the Property, we agree.

 Before discussing the elements of each claim specifically, we note generally that

both claims require a finding that Respondents either supplied false information or failed

to disclose material information. The trial court’s judgment focuses on Denness’ letter,

and specifically Denness’ statements about the Property’s pool. The trial court found such

statements were mere speculation regarding leakage from the pool. The trial court noted

the pool inspection revealed no leaks in the pool, Denness had no apparent expertise

regarding the existence of a leak in the pool, and Wernimont took proper steps to ensure

the pool was not leaking. The court concluded, therefore, that there were no material facts

to disclose contained in the letter and no indication that Respondents provided false

information.

 However, Buyers’ allegations are broader than simply notification of a potential

pool issue arising from Denness’ letter. Buyers allege three actions by Wernimont

constituted unlawful acts under the MMPA or negligent misrepresentations: (1) failing to

disclose Denness’ letter because it contained material facts, regarding both the pool and

water drainage issues, which Wernimont had a duty to disclose; (2) failing to amend the

 6
seller’s disclosure statement in light of the letter, resulting in the seller’s disclosure

statement containing misrepresentations; and (3) misrepresenting that “every detail ha[d]

been addressed” and the Property had been “meticulously maintained” in the MLS listing.

 Regarding Denness’ letter, the trial court focused on Denness’ speculation as to the

cause of the water runoff, rather than the existence of water runoff itself, which is the main

issue here. Denness states a fact that water was coming from the Property onto his property,

based on his own personal knowledge. The letter also states Nute had redirected his sump

pump discharge into the street the summer prior to the sale of the Property, which Nute

confirmed in his deposition. The letter’s contents and Nute’s actions are undisputed in the

record. Our question here is whether these facts preclude summary judgment on either of

Buyers’ claims against Respondents, and we find they do. We discuss each claim in turn.

 Negligent Misrepresentation

 To prevail on their claim of negligent misrepresentation, Buyers must prove that

(1) Respondents supplied information in the course of business; (2) due to Respondents’

failure to exercise reasonable care, the information was false; (3) Respondents intentionally

provided such information for the guidance of a limited group of persons in a particular

business transaction; (4) Buyers justifiably relied on the information; and (5) Buyers

suffered pecuniary loss as a result. Kesselring v. St. Louis Group, Inc., 74 S.W.3d 809,

813 (Mo. App. E.D. 2002) (noting negligent misrepresentation differs from fraudulent

representation in that former does not require knowledge or recklessness).

 Additionally, a claim for negligent misrepresentation can arise from a failure to

disclose information, but only where the person is under a duty to disclose. Id. at 814. “A

duty to speak arises where one party has superior knowledge or information that is not

 7
reasonably available to the other.” Hess v. Chase Manhattan Bank, USA, N.A., 220

S.W.3d 758, 765 (Mo. banc 2007). Further, “[w]hether or not a duty to disclose exists . . .

must be determined on the facts of the particular case.” Id.; see also Veazie-Gallant v.

Brown, 620 S.W.3d 641, 651 (Mo. App. E.D. 2021) (“Whether parties are on equal footing

is ordinarily a question for the factfinder”). Regarding real estate agents specifically,

Section 339.730 3 states, “A licensee acting as a seller’s . . . agent . . . shall disclose to any

customer all adverse material facts actually known or that should have been known by the

licensee.” An adverse material fact is defined as “a fact related to the property not

reasonably ascertainable or known to a party which negatively affects the value of the

property.” Section 339.710.1.

 Here, Respondents argue that, given the undisputed facts in the summary judgment

record, Buyers are unable to show either that Respondents provided false information or

that Respondents failed to disclose information they had a duty to disclose. We find

material factual issues remain regarding both, given the facts of ongoing water drainage

issues and the sump pump relocation noted in Denness’ letter and Nute’s deposition.

 Regarding Denness’ letter, as we have noted, the trial court determined it contained

speculation about whether the pool was the source of the water issues on Denness’

property. However, the letter also contained factual statements regarding ongoing water

drainage issues on the Property. Specifically, he stated that water runoff had occurred

“over the past several years” from the Property into Denness’ back yard and onto the side

of Denness’ home. Denness then noted that the summer prior to the sale of the home, there

was a “constant run of water” over Denness’ driveway. The letter indicates Denness

3
 All statutory references are to RSMo. Cum. Supp. 2017, unless otherwise indicated.

 8
brought the latter to Nute’s attention, and Nute dug a trench and redirected the water

flowing over Denness’ driveway onto the street. Nute testified by deposition that the

previous summer he had relocated his sump pump discharge, and that is what caused water

to run over Denness’ driveway. Nute testified he then “buried 80 feet of black pipe[, a]nd

the water ran into the black pipe, out to the curb, and down the street into the sewer.”

Respondents argue, therefore, that the drainage issue had been resolved, and as such, there

was no need to disclose it. 4

 However, even if Nute’s actions resolved Denness’ complaint of water running

across Denness’ driveway, the evidence in this summary judgment record does not

establish that Nute’s actions resolved the sump pump drainage problem altogether. Nute

does not reveal why he relocated his sump pump discharge in the first place, whether

because of a problem with the sump pump or for other reasons. Then, once Nute redirected

the sump pump drainage a second time to address the issue of water running over Denness’

driveway, there is still an issue regarding whether Nute’s action properly resolved the water

drainage or sump pump problems. The record is not clear that a drain line running the

4
 There is no bright line rule regarding whether property defects that have been resolved prior to sale must
be disclosed. As noted above, whether a duty to disclose exists depends on the particular facts of each case.
Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. banc 2007). A real estate agent could
presumably be held liable for misrepresentations regarding past repairs assuming all other elements of either
negligent or fraudulent misrepresentation are met, or for a failure to disclose past repairs if the agent’s duty
to disclose is triggered, for instance, if the fact of the past repair negatively affects the value of the home.
Compare Berryman v. Riegert, 175 N.W.2d 438 (Minn. 1970) (real estate agent liable for misrepresentation
where he made affirmative statement that house had no water problems and court found water problems in
house were susceptible of knowledge by agent); with Richards v. ABN AMRO Mortgage Group, Inc., 261
S.W.3d 603 (Mo. App. W.D. 2008) (finding no duty to disclose prior sale of 30 feet of property to city
because undisputed facts showed buyer would discover sale through ordinary diligence); and Berman v.
Regna, 728 S.W.2d 285 (Mo. App. E.D. 1987) (finding no affirmative misrepresentation in buyer’s suit after
discovering extensive structural termite damage, where real estate agent did not state that property had never
had termites previously, turned over records regarding prior termite treatment showing no structural damage,
and buyer never asked about prior infestation or damage).

 9
sump pump discharge to the street was the proper solution 5 or in fact eliminated the sump

pump drainage problems, as Buyers allege they have experienced sump pump backups and

water drainage problems since moving in. The summary judgment record simply does not

contain enough evidence to determine whether Nute fully resolved the issues with water

drainage and with his sump pump.

 Further, Denness’ letter laid out years’ worth of water issues. Apart from the water

running over Denness’ driveway, which Nute allegedly remediated, Denness’ letter

indicated water had been flowing for the past several years from the Property into Denness’

back yard and onto the side of his house. Nute stated that any water running into Denness’

back yard was rainwater, because the Property was on a hill and Denness lived down the

hill from the Property. However, Denness stated he saw “no evidence of water running

this past winter [when the pool was not in use] and with all the rain . . . [he] ha[d] not seen

any evidence of water running[,]” which led him to suspect the pool. The record does not

establish the source of the longstanding water drainage issues Denness raised. More

importantly, regardless of the cause, the summary judgment record does not contain

conclusive facts regarding whether these water drainage issues were ever resolved.

 Wernimont would have been aware of all these facts prior to the sale by means of

Denness’ letter and her conversation with Nute thereafter. The question in our review of

the trial court’s summary judgment is whether the undisputed facts in the summary

judgment record establish she had no duty to disclose them, and additionally, that

5
 In fact, one of Buyers’ claims against Sellers involves failure to obtain proper permits for work done at the
Property. There was no evidence in the record here regarding whether a permit was required or not for the
work Nute did to redirect his sump pump drainage into the street, or whether the manner in which Nute
discharged his sump pump drainage was permitted by applicable local regulations.

 10
Respondents are not liable for any statements in the seller’s disclosure statement that may

have been false in light of these facts.

 As previously noted, Sellers answered “no” to the following question on the seller’s

disclosure statement:

 Are you aware of any soil, earth movement, flood, drainage or
 grading problems on the property or that may affect the
 property? (emphasis added)

Given the facts in the record noted above regarding ongoing water drainage issues into

Denness’ backyard and onto the side of his home, Nute’s relocation of his sump pump

drainage twice, and Buyers’ immediate issues with sump pump backups and water drainage

problems, this summary judgment record contains material fact disputes regarding whether

Sellers’ answer to the above question was false.

 Respondents next argue that they not liable for any misrepresentations in the

seller’s disclosure statement because Wernimont did not fill out or sign the document.

Section 339.190.2, which governs licensed real estate brokers and salespersons, provides

the following in pertinent part:

 [N]o action shall be instituted against a real estate licensee for
 any information contained in a seller’s disclosure . . ., unless the
 real estate licensee . . . knew prior to closing that the statement
 was false or the licensee acted in reckless disregard as to whether
 the statement was true or false.

Thus, Respondents could be liable for false statements in the seller’s disclosure here if

Wernimont knew they were false or acted in reckless disregard as to whether they were

true or false.

 Here, as we have noted, there are material fact disputes regarding whether Sellers’

answers to the questions about the existence of any water drainage problems or flooding

 11
were false. Based on the summary judgment record, it is reasonable to infer that

Wernimont was put on notice of these potential water drainage issues and either knew the

seller’s disclosure contained false statements or acted in reckless disregard as to whether

such statements were true or false. See Nixon, 253 S.W.3d at 84 (we grant non-movant

benefit of all reasonable inferences on review of summary judgment). Thus, material fact

issues remain regarding Wernimont’s liability for potentially false representations in the

seller’s disclosure statement.

 However, apart from the seller’s disclosure itself, Buyers alleged Wernimont failed

to disclose material facts she had a duty to disclose here. Granting reasonable inferences

in favor of Buyers as non-movants, we find material fact disputes in the summary judgment

record regarding whether Wernimont had a duty to disclose the existence of the water

drainage issues Denness raised, as well as Nute’s redirection of sump pump drainage in the

first place, and later into the street.

 A review of the timeline of facts here demonstrates the material factual disputes in

the record regarding whether water drainage and sump pump issues remained at the time

of the sale of the home:

 1. Ongoing for years prior to the sale of the Property: water running from
 the Property into Denness’ backyard and onto the side of his home.

 2. Summer of 2016: Nute redirected his sump pump drainage for an
 unknown reason.

 3. Water began to run across Denness’ driveway.

 4. Denness informed Nute, and Nute redirected his sump pump drainage
 again by digging a trench and running a drain pipe to the street.

 5. March 5, 2017: Sellers sign completed seller’s disclosure statement
 denying flood and water drainage issues.

 12
 6. April 1-3, 2017: Denness informs Wernimont of ongoing water issues
 and the specific prior issue of water running across Denness’ driveway.
 Denness opines that other water drainage issues may be due to a
 problem with the Property’s pool. Denness states he wants to ensure
 new Property owners address water issues.

 7. Wernimont discusses Denness’ letter with Nute and goes to observe the
 pool. Nute states he resolved issue of water running over Denness’
 driveway by relocating his sump pump drainage.

 8. April 7, 2017: Buyers purchase the Property.

 9. Buyers immediately experience a number of problems, including sump
 pump backups, water drainage issues, and leaking from the pool.

 Therefore, the summary judgment record supports the inference that these water

drainage issues that Denness raised remained at the time of sale and are material facts any

prospective buyer would want to know. See First Fin. Ins. Co. v. Golliday, 91 S.W.3d 679,

683 (Mo. App. E.D. 2002) (genuine issue of material fact exists where record contains

evidence of two plausible, but contradictory, accounts of essential facts). The fact that

Denness felt the need to inform Wernimont of these issues at all indicates that water

drainage issues remained a problem, and Denness knew that whomever purchased the

Property would need to resolve them. Further, prior to the sale, Denness had no ability to

communicate with Buyers, as Denness was not a party to the Property’s sales contract. He

took the most reasonable step of informing Sellers’ agent to ensure Buyers would be put

on notice of the water drainage issues, so that Buyers would be responsible to remedy these

issues.

 A further reasonable inference is that Wernimont had a duty to disclose such facts

because the water drainage issues were not readily apparent to Buyers and these issues

could negatively affect the value of the Property. See Section 339.710.1; Hess, 220 S.W.3d

at 765. As such, the record contains genuine issues of material fact surrounding

 13
Wernimont’s duty to disclose such facts, thus summary judgment was inappropriate on

Buyers’ claim of negligent misrepresentation regarding the sump pump and water drainage

issues raised in Denness’ letter and acknowledged by Nute. 6

 MMPA Claim

 Buyers also raised a claim under the MMPA, which prohibits the use of unfair

practices in connection with the sale of merchandise. Section 407.020; Conway v.

CitiMortgage, Inc., 438 S.W.3d 410, 414 (Mo. banc 2014). Section 407.010 defines

“merchandise” to include real estate. See also Hess, 220 S.W.3d 758, 768-69 (Mo. banc

2007) (noting in 2000, legislature broadened private right of action under MMPA to

include transactions in “merchandise,” including real estate). Additionally, the Missouri

Supreme Court has determined that the plain meaning of “unfair practice” is “unrestricted,

all-encompassing and exceedingly broad.” Conway, 438 S.W.3d at 416 (quoting Ports

Petroleum Co., Inc. of Ohio v. Nixon, 37 S.W.3d 237, 240 (Mo. banc 2001)).

 Buyers’ claim for a violation of the MMPA requires proof that (1) Buyers

purchased the Property; (2) for personal, family, or household purposes; and (3) suffered

an ascertainable loss of money or real or personal property; and (4) as a result of an act

declared unlawful by Section 407.020. Hess, 220 S.W.3d at 773. As relevant here, Section

407.020 includes misrepresentation, concealment, or omission of a material fact. The

regulations under the MMPA define misrepresentation as “an assertion that is not in accord

6
 The trial court’s summary judgment does not address Buyers’ allegation that Wernimont represented that
“every detail ha[d] been addressed” and the Property had been “meticulously maintained” in the MLS listing.
Respondents’ liability for such statements depends in part on whether such statements were fact or opinion,
and such determination “depend[s] upon the circumstances surrounding the representation.” Clark v. Olson,
726 S.W.2d 718, 720 (Mo. banc 1987). Given the factual nature of this issue, we leave this issue for a fact
finder to decide upon remand.

 14
with the facts.” 15 C.S.R. 60-9.070(1). 7 Further, “knowledge that the assertion is false or

misleading, intent . . . or any other capable mental state such as recklessness or negligence,

are not elements of misrepresentation.” 15 C.S.R. 60-9.070(2). “It is the defendant’s

conduct, not his intent, which determines whether a violation has occurred.” State ex rel.

Webster v. Areaco Inv. Co., 56 S.W.2d 633, 635 (Mo. App. E.D. 1988).

 However, omission of a material fact is “any failure by a person to disclose material

facts known to him/her, or upon reasonable inquiry would be known to him/her.’” 15

C.S.R. 60-9.110(3). Thus, while an MMPA claim of misrepresentation lacks a scienter

requirement, a claim of omission of a material fact requires proof that the undisclosed facts

were known or would be known upon reasonable inquiry. Plubell v. Merck & Co., Inc.,

289 S.W.3d 707, 713 n.4 (Mo. App. W.D. 2009). A material fact is, in relevant part, “any

fact which a reasonable consumer would likely consider to be important in making a

purchasing decision . . . .” 15 C.S.R. 60-9.010(1)(C).

 Here, as we have already discussed, a reasonable inference from this summary

judgment record is that the existence of water drainage going into Denness’ property and

onto the side of his home, as well as Nute’s redirection of sump pump drainage to the street,

were material facts that Wernimont knew about and should have disclosed. Thus, summary

judgment on Buyers’ MMPA claims against Respondents was inappropriate on this basis

as well.

 Conclusion

 We find the trial court overlooked portions of Buyers’ claims about which there

exist material issues of fact that precluded summary judgment. Specifically, a factual

7
 All administrative rule citations are to their current versions in the Missouri Code of State Regulations,
which were also in effect in 2017.

 15
dispute exists over whether the facts stated in Denness’ letter regarding water drainage and

the sump pump at the Property indicated that water drainage problems, flooding, or sump

pump issues existed or may affect the Property. As such, a factual dispute exists regarding

whether Wernimont had a duty to disclose the issues Denness raised or a duty to ensure the

Sellers amended their disclosure statement. Thus, summary judgment was inappropriate

on Buyers’ claims for negligent misrepresentation and a violation of the MMPA. We

reverse the trial court’s judgment and remand for further proceedings.

 Gary M. Gaertner, Jr., P.J.

James M. Dowd, J., and
Thomas C. Clark II, J., concur

 16